### 18347. CALHOUN *v.* THE STATE.

ALMAND, Justice. Under an indictment charging Robert Calhoun with the murder of James McGinty by shooting him with a loaded pistol, Calhoun was found guilty and sentenced to be electrocuted. His motion for new trial, on the general grounds and six special grounds, being overruled, he brings the case here, assigning error on the order denying his motion for new trial.

On the trial, J. H. Potts, a deputy sheriff of Coweta County, testified that about two hours after the shooting of McGinty, he had had a conversation with the defendant, at which time the defendant made a statement freely and voluntarily relating to the circumstances of the shooting, being as follows: "When I got him in the car I asked him, I said, 'Robert what in the name of God did you want to do that for?' And that is when he started crying, and said, 'Lord, I don't know, sir,' said, 'Mr. Potts, please, sir,' said, 'Can't you do something for me?'. And just kept on, just over and over that way, discussing about how long he had had the pistol and where he got it and why he had it and please help him; do something for him; he didn't want to have to go back and he knew what it meant and all, just wanting help. Yes, he told me he got the pistol just to keep there at the house. The pistol was in the pocket of Mr. Nelms' car. Mr. Nelms gave it to me himself there in the presence of Robert and his wife. Yes, that is the gun. That is the gun that was given to me. Yes, I was just talking to him about what he wanted with a gun; why he needed one and he said he just needed it to keep at the house. Yes, it was about half full of cartridges at the time. Yes, he said he shot him with that gun. . . Yes, he said they had had a fuss that afternoon. I had heard about that part of it before Robert got up there. You see they lived about three doors apart. I imagine about 75 yards apart, this James McGinty and Robert. Robert had been down to—Robert told me this.

He had been down to James's house early that night and the two women got to fussing, James's wife and Robert's wife and that he slapped Ruby who is James's wife down at James's house. Then he left and that later on when he came back somebody told him, that is when I was asking him why he shot him and said that somebody told him James was looking for him and said he went up there and said when James came to the door he told me first, I asked him, I said, 'Did James have a gun, knife or anything?'. He said, 'Lord, I don't know, sir.' Later on that same day before I got down to the jail with him he did say that James had a butcher knife." In his unsworn statement to the jury, the defendant stated in substance that he went with his wife to the home of James McGinty, where an altercation took place between the deceased's wife and the defendant, the deceased not being present; that they left the home of McGinty and went back to the defendant's home, and later the defendant went to the home of McGinty, and when McGinty came to the door, he cursed the defendant and grabbed him and "drawed back like that there, and I shot him"; that he did not intend to shoot the deceased to kill him, but intended to shoot him in the shoulder and stop him. Although there was no eyewitness to the shooting, the defendant's admission that he shot the deceased was corroborated by other evidence that the wound inflicted by the defendant was the cause of McGinty's death. *Held:*

1. The statement made by the defendant to the arresting officer was sufficient to authorize the court to charge the jury on the law of confessions. The objection to the charge as contained in ground 3 of the amended motion for new trial, that the charge was not authorized by the evidence, is without merit.

2. (a) Where a witness for the State testified that the defendant after his arrest, in reply to a question of an officer as to why he shot the deceased, stated that one of the reasons was that "he didn't want to have to go back to the chaingang because he had bought that little house over there," which testimony was objected to on the ground that it introduced the character of the defendant in evidence by showing a previous criminal record, and such objection was overruled, ground 1 of the amended motion for new trial, assigning error on such ruling, was properly overruled. The statement by the accused that he did not want to go back to the chaingang was a part of the whole incriminating statement or confession, and one of the reasons given by the defendant as to why he shot the deceased. " 'It is no valid ground of objection to the admission in evidence of an incriminatory statement or confession made by the accused in a criminal case that the language indicated that the accused had committed also another and separate offense.' *Watts* v. *State,* 8 *Ga. App.* 694 (2)." *Reed* v. *State,* 197 *Ga.* 418 (6) (29 S. E. 2d 505).

(b) Ground 5 of the amended motion, which assigns error on the refusal of the court to declare a mistrial because a State's witness, in testifying as to the statement dealt with in the first part of this division, said, "Well, the main thing that Robert told me was about his not wanting to go back to the chaingang," was properly overruled.

3. A remark addressed to counsel for the defendant during a colloquy

between the court and counsel as to the admissibility of certain evidence, complained of in ground 2 of the amended motion as intimating or expressing an opinion to the jury that the defendant had made a confession, cannot be made a ground of a motion for new trial when no motion for a mistrial or other objection was made before a verdict was rendered. The record in this case fails to show that at the time the alleged remark was made counsel for the defendant either made objection to the same or moved for a mistrial. *Coates* v. *State*, 192 *Ga*. 130 (3) (15 S. E. 2d 240). Under this rule, ground 2 of the amended motion cannot be considered.

4. Grounds 4 and 6 of the amended motion assert that the court erred in permitting two witnesses for the State to testify that, about two hours prior to the time the defendant shot the deceased, the defendant, while on a road in the neighborhood where the defendant and the deceased lived, was seen to shoot a pistol two or three times, over objection (a) that the shooting was not a part of the res gestae; (b) that it was evidence of a distinct offense, and (c) that it was irrelevant and inadmissible. The record discloses that another witness for the State testified without objection from the defendant to the same act of shooting. These grounds are without substance, and were properly overruled.

5. The evidence authorized the verdict, and the court did not err in refusing a new trial.

*Judgment affirmed. All the Justices concur.*

Argued September 15, 1953—Decided October 15, 1953—Rehearing denied November 12, 1953.

*Welborn B. Davis, Jr., Henry N. Payton,* for plaintiff in error. *Wright Lipford, Solicitor-General, J. L. Glover, Eugene Cook, Attorney-General, Rubye G. Jackson,* contra.