## 30173. BERRYHILL v. THE STATE.

HALL, Justice.

Michael Gene Berryhill, alias Michael Gene Stanley, was charged and convicted of felony murder and armed robbery by a jury in Bartow County. He received the death sentence for the felony murder and life imprisonment for the armed robbery.

Defendant, age 23, had a long history of psychological problems and a lengthy prior criminal record. He was diagnosed as a sociopathic personality affected with paranoid schizophrenia and suffered from delusional compulsions. In addition, he had been addicted to airplane glue sniffing from the age of thirteen.

On the evening of October 7, 1974, defendant and Jerry Roy Lane rode around Cartersville, Georgia, selecting homes for potential burglaries. Defendant picked out the home of George Hooks and rang the door bell. When Hooks refused to admit the defendant, he fired a shot through a window, reached in and opened the door. As Hooks fled up the stairs, defendant shot him twice in the legs; then, followed him upstairs and shot him a third time through a closed bedroom door. Defendant shot Hooks twice more; the fifth shot was through the head while Hooks lay on the floor of his daughter's bedroom. Defendant then demanded money from Mrs. Hooks and threatened to shoot both Mrs. Hooks and her daughter. He also grabbed eleven-year-old Steven by the hair and threw him down next to his dying father.

Defendant tore the phone out of the wall and followed Mrs. Hooks downstairs where she gave him all the money they had, a total of six dollars. When Mrs. Hooks refused to lie down next to her husband's body, defendant suddenly ran out of the house. Defendant was apprehended a little over a month later in Missouri and returned to Georgia for trial. He now appeals from his conviction.

1. The evidence supports the verdict of guilty.

2. Berryhill contends the trial court erred in denying his motion for change of venue. Only newspaper clippings were presented with the motion, and voir dire examination included questioning on any possible

prejudice from these articles. Furthermore, the final order on the motion was not signed until after the voir dire examination.

Under the circumstances of this case, the trial court did not err in denying the motion for change of venue. *Krist v. Caldwell,* 230 Ga. 536 (198 SE2d 161) (1973); *McCrary v. State,* 229 Ga. 733 (194 SE2d 480) (1972); *Dutton v. State,* 228 Ga. 850 (188 SE2d 794) (1972).

3. We find no merit in Berryhill's contention that the court erred in denying to defense counsel his request to reserve his opening statement to the jury until the conclusion of the state's case, and before beginning the defendant's case in chief.

Although Code Ann. § 27-2201 prescribes the order in which opposing counsel will make their closing arguments to the jury, the statutes are silent concerning the order counsel will follow in making their opening statement to the jury. Similarly, there are no Georgia cases on this point delineating any particular right of counsel to make his opening statement at one time or another in his sole discretion. Thus, we have something of a question of first impression.

We note that this question concerns a right far more procedural than substantive — that is, when the statement may be made, not whether one is allowed. It is traditional that most of these procedural matters which come up during the conduct of a trial should lie within the sound discretion of the trial court in the absence of a controlling statute, and there is none here. We see no reason why the traditional approach is inappropriate here, and accordingly we conclude that the trial court may rule in its discretion whether the defendant's opening statement shall be made following the state's opening statement or at the conclusion of the state's case. Cf. *Pealock v. Pealock,* 227 Ga. 795 (183 SE2d 397) (1971); *Hines v. Donaldson,* 193 Ga. 783 (20 SE2d 134) (1942); *Duke v. Steed,* 127 Ga. App. 541 (194 SE2d 257) (1972). This is also the rule generally followed throughout the country. "Where there is no statute or rule of court as to the time at which defense counsel in a criminal case may make his opening statement, the courts generally hold that it is a matter within the sound discretion of the trial

court, and any exercise of such discretion will not be reversible error unless there is a clear showing of abuse of discretion or the defendant suffers some substantial injury." Annot. 93 ALR2d 951 (1904). Accord, 75 AmJur2d 287 Trial, § 203 (1974).

Berryhill makes no showing of harm to him flowing from the court's ruling on this point; and accordingly, we conclude that it has not been shown that the trial court abused its discretion.

4. Berryhill enumerates as error an order of the trial court that counsel for the defendant divulge to the district attorney, prior to trial, a list of all the witnesses the defendant expected to use. The order was in response to a motion by the prosecuting attorney. Appellant's counsel made no objection and complied with the court's order. There being no objection in the court below, the point is not subject to appellate review. Furthermore, the appellant has failed to show any harm from compliance with the order.

5. Berryhill's contention that when a prisoner is known by police to be represented by counsel, anything he says to police in the absence of counsel is per se inadmissible, whether "voluntary" or not, is without merit. *Pierce v. State,* 235 Ga. 237 (1975).

6. Berryhill contends the trial court erred in denying his motion for mistrial and in refusing to instruct the jury to disregard the testimony of the police chief that Berryhill had told him, "I've been in jail since I was thirteen years old and I'm not going back . . . I'll either kill myself or I'll kill someone else and make y'all kill me." This statement was part of his whole incriminating statement or confession. The testimony of the police chief immediately preceding the above was "I asked him if he was willing to talk to us about the charges. He said 'I'll talk to you about part of them and part of them I won't until after I consult with my attorney and my mother.' He went on to make the statement, he said 'I'm not going to serve any time,' He said . . ." and then came the above statement.

We find no error. "It is no valid ground of objection to the admission in evidence of an incriminatory statement or confession made by the accused in a criminal case that

the language indicated that the accused had committed also another and separate offense." *Calhoun v. State,* 210 Ga. 180, 181 (78 SE2d 425) (1953).

7. Berryhill contends the trial court erred in denying his motion for mistrial on the grounds of (1) alleged highly inflammatory and prejudicial remarks made by the prosecutor in his closing argument to the jury; (2) the prosecutor misstated the law as to the results of an acquittal by reason of insanity and (3) that the trial court erred in denying him the right to argue these first two grounds in the presence of the jury. He also contends the trial court erred in refusing to instruct the jury to disregard the remarks of the prosecutor and to reprimand the prosecutor for the remarks he made.

The remarks objected to are "Well, my friends, if you do, [find him not guilty by reason of insanity] and His Honor is going to charge you this in the law and Mr. Elsey read some of it to you, as long as His Honor can keep him, as long as he can require him to be confined is one year, and if you do it, my friends, let's you and I and let's all the people of this county and this state spend that year fortifying our houses with guns, and ammunition and barring our doors because you will have turned loose a sociopath. You will have turned loose something worse than a mad dog, if you do it."

These remarks, in identical settings, have been considered in other appeals. In *Miller v. State,* 226 Ga. 730, 731 (177 SE2d 253) (1970) the prosecutor's characterization of the defendant "as a brute, beast, an animal, and a mad dog who did not deserve to live . . ." was held not to require a mistrial. Appeals to convict for the safety of the community have at least by inference been upheld in *Hart v. State,* 227 Ga. 171 (179 SE2d 346) (1971), and Bryant v. Caldwell, 484 F2d 65, 66 (1973), cert. den., 415 U. S. 981 (1974).

In *Lingo v. State,* 224 Ga. 333 (162 SE2d 1) (1968) the prosecutor's remarks that if the jury found in favor of the plea of insanity, the defendant would be sent to a state hospital and remain there until discharged "in the manner prescribed by law" was upheld. Therefore, we find no error in denying a mistrial where the language was similar to that in *Lingo* and not an incorrect statement of

the law. In addition, the trial judge instructed the jury that he was to be its only source of the law to be applied and instructed the jury in accord with Code Ann. § 27-1503. See also *Hulsey v. State,* 233 Ga. 261 (210 SE2d 797) (1974).

The jury has no function in a motion for mistrial. Therefore, there is no right to argue the motion in the presence of the jury. All of these contentions are without merit.

8. Berryhill contends the trial court erred in its charge to the jury wherein it alluded to the necessity of showing imbecility or idiocy as a requirement for proving insanity. The trial court's charge was: "Mental abnormality or mere weakness of mind is no excuse unless it amounts to imbecility or idiocy which deprives the offender of the ability to distinguish right from wrong." The instruction clearly shows that weak-mindedness alone is no defense to a crime and was not improper. *Reece v. State,* 212 Ga. 609 (94 SE2d 723) (1956); *McKethan v. State,* 201 Ga. 23 (39 SE2d 15) (1946).

9. Berryhill contends the trial court erred in its charge to the jury wherein it stated ". . . if you believe beyond a reasonable doubt that this defendant committed the crimes as charged in this indictment, prior to its return by the Grand Jury, it would be your duty to convict him." We find no error. This statement, set in the context in which it was given with the instructions preceding it, told the jury that if it found the appellant sane and was convinced beyond a reasonable doubt the appellant committed the crimes, then it was their duty to convict him. See Code Ann. § 26-501.

10. Berryhill enumerates as error the trial court's charge on insanity. The charge is in substance the same as that upheld in *Grace v. Hopper,* 234 Ga. 669 (217 SE2d 267) (1975). Considering the charge as a whole, we find no error under the holding in *Grace,* supra.

11. Berryhill contends the trial court erred in allowing, over objection by defense counsel, the prosecutor to stand directly in front of a witness and to stare directly into his face, thereby intimidating him while the witness was on direct examination by defense counsel. There is nothing in the record to indicate the

distance between the prosecutor and the witness. This being within the sound discretion of the trial court, we find no abuse of discretion.

12. Berryhill contends the trial court erred in participating in and allowing, or otherwise permitting, an unlawful and illegal communication with the jury during the time the jury was deliberating the sentencing of the defendant, said communication being made when neither the defendant nor his counsel were present, and without the knowledge or the acquiescence of either the defendant or his counsel.

The communication in issue consisted of a question sent by the jurors to the trial judge and transmitted by the bailiff during the sentencing deliberations. They wondered "if they could sentence appellant to a life sentence without any possibility of parole?" The trial judge instructed the bailiff to inform the jurors that the court could not answer that question. Although all communications with the jury are to be discouraged except in open court with all persons present, the communication here did not amount to an instruction or charge to the jury and no reversible error is shown. *Thacker v. State,* 226 Ga. 170 (173 SE2d 186) (1970); *Leverette v. State,* 104 Ga. App. 743 (122 SE2d 745) (1961).

Rogers v. United States, — U. S. — (95 SC 2091, 45 LE2d 1), urged by Justice Hill in his dissent, is in the view of a majority of this court inapposite for three reasons. First, it involved a federal trial and the applicability of the Federal Rule 43 (Fed. R. Crim., p. 43) and not the Federal Constitution. Second, it involved the trial court's actually answering the jury's inquiry outside the presence of the defendant; whereas here we have the court merely refusing to answer the jury's question. Finally, Rogers and the criminal case it cites for support both involved a trial court's communication to the jury while the jury considered guilt, and further on their facts involved a possibility that the nature of that communication could have influenced the jury's verdict on guilt. Here, however, we do not see how a mere statement that the court could not answer the question concerning sentencing could have undermined the integrity of the jury's choice of sentence.

13. Berryhill's contention that the conduct of the proceedings which transpired from the very beginning to the very end of the trial were cumulative and so prejudicial and unfair as to result in a denial of the defendant's constitutional right to a fair and impartial trial is simply without support in the record.

14. While Berryhill has no enumeration of error on the sentence, we must review the same under the mandate of the death penalty procedure. *Prevatte v. State,* 233 Ga. 929 (214 SE2d 365) (1975). In our sentence review we have considered the aggravating circumstance found by the jury and the evidence concerning the crime introduced in court.

We have reviewed the sentence as required by Ga. L. 1973, p. 159 et seq. (Code Ann. § 27-2537 (c) (1-3)), as we did in *Coley v. State,* 231 Ga. 829 (204 SE2d 612) (1974), and each subsequent case involving a death penalty under this statute. We conclude that the sentence of death imposed here was not imposed under the influence of passion, prejudice, or any other arbitrary factor. The evidence supports the jury's finding of a statutory aggravating circumstance, i.e., that the offense of murder was committed while the appellant was engaged in another capital felony, to wit: armed robbery.

Furthermore, we have compared the evidence and sentence in this case with other similar cases and conclude the sentence of death is not excessive or disproportionate to the penalty imposed in those cases. Those similar cases we considered in reviewing the case are contained in the appendix attached to this opinion.

*Judgment affirmed. All the Justices concur, except Gunter, Ingram, and Hill, JJ., who dissent.*

ARGUED SEPTEMBER 3, 1975 — DECIDED OCTOBER 28, 1975 — REHEARING DENIED NOVEMBER 24, 1975.

*William T. Elsey, Kit Barron Bradshaw,* for appellant.

*David N. Vaughn, Jr., District Attorney, Arthur K. Bolton, Attorney General, Harrison Kohler,* for appellee.

APPENDIX.

Similar cases considered by the court: *Lingo v. State,* 226 Ga. 496 (175 SE2d 657); *Johnson v. State,* 226 Ga. 511 (175 SE2d 840); *Pass v. State,* 227 Ga. 730 (182 SE2d 779); *Watson v. State,* 229 Ga. 787 (194 SE2d 407); *Callahan v. State,* 229 Ga. 737 (194 SE2d 431); *Scott v. State,* 230 Ga. 413 (197 SE2d 338); *Kramer v. State,* 230 Ga. 855 (199 SE2d 805).

HILL, Justice, dissenting.

This case involves hideous crimes. In affirming, this court makes law of equal stature. I dissent from Divisions 3 and 12.

1. It has long been accepted practice in this state that counsel for the parties are entitled to make an opening statement to the jury. Plaintiff's counsel makes plaintiff's opening statement before the introduction of evidence. "If the defendant's lawyer desires, he may make a similar statement immediately after the plaintiff's statement is made, or he may wait until the plaintiff closes his testimony, and just before the defendant begins his testimony." Ga. Prac. and Proc., § 14-1 (4th Ed.).

In Division 3, the court holds that this right of the defendant, to wait to make the defendant's opening statement until the close of plaintiff's case, is not a right at all. The court holds that because the statutes and decisions are silent concerning the order counsel will follow in making their opening statement to the jury, the matter is within the discretion of the trial court.

Since the first trials were conducted in this state, it has been within the discretion of defense counsel to decide at which point the defendant's opening statement should be made. It is wrong, in my view, to hold that where statutes and decisions are silent, the matter is therefore within the discretion of the trial court.

There is no statute or decision giving counsel for either side the right to make an opening statement. It follows from the majority opinion that the court may, in its discretion, deprive counsel of the right to make an opening statement altogether. It also follows from the majority opinion that the court may, in its discretion, prohibit defense counsel from making defendant's opening statement before the introduction of plaintiff's

evidence.

It also follows that the court may control the opening statements of counsel in civil as well as criminal cases, because the statutes and cases are silent as to both.

The statutes and cases do not provide whether the parties to the litigation shall testify first, or last. The statutes and decisions are silent as to many things, too many things, which heretofore have rested within the sound discretion of counsel.

By its holding in Division 3, the court invites the General Assembly to regulate the trial of cases by detailed statutes, with the result that trial judges will lose that discretion which is truly needed to control the conduct of those diverse cases, lawyers, and parties which come before them.

The defendant at the trial of this case was deprived of the right not to disclose the details of his defense until after the prosecution rested. By its decision, the court makes this defendant's loss the loss of all litigants and lawyers and ultimately the trial courts.

2. I dissent also from Division 12 of the court's opinion. The defendant was deprived of his constitutional right to be present throughout his trial. See Rogers v. United States, —U. S.—(95 SC 2091, 45 LE2d 1).

During their deliberations as to punishment, the jury asked "if they could sentence the defendant to a life sentence without any possibility of parole." It is clear that one or more jurors were not persuaded that the death penalty should be inflicted. The trial court's ex parte response to the bailiff to be communicated to the jury was "Tell the jury I could not answer that question." The effect of this response was to inform the jury that the court could not give a "yes" answer to the question.

The trial judge's response to the jury, in addition to the fact that it should have been made in open court in the presence of the defendant and his counsel, should have included the admonition that the jury had been instructed as to those factors which they should and could consider in deciding whether to sentence the defendant to death or to life in prison, and that the jury should make that determination according to the instructions given them in charge and without regard to matters not referred to in

the charge.

That is to say, the jury should have been admonished to choose between life and death according to law, without regard to extraneous matters. By being deprived of the right to be present, the defense was denied the opportunity to request the proper response to the jury's question.

I therefore dissent.