## 30453. DOBBS v. THE STATE.

INGRAM, Justice.

This is a companion case to *Burke v. State,* 234 Ga. 512 (216 SE2d 812) (1975) and involves a review by this court of alleged trial errors and the death sentence imposed upon appellant in the Superior Court of Walker County. Appellant was charged on December 14, 1973, with one count of murder, two counts of armed robbery and two counts of aggravated assault. A Walker County grand jury indicted appellant for these offenses on May 8, 1974, and he was convicted by a jury on all counts in a trial which began on May 20, 1974. Appellant received the death sentence for the offense of murder, ten years imprisonment for each count of aggravated assault, and life imprisonment for each count of armed robbery.

Summary of the Evidence

Early on the morning of December 14, 1973, appellant Wilburn Wiley Dobbs asked Walter Lee Harris and Charles Burke if they wanted to commit a robbery. Appellant said he needed money so the three of them drove in appellant's 1967 blue Chevrolet to a grocery store and gas station owned by Roy L. Sizemore. They looked around the store and left but thereafter returned to the store in different coats. Appellant told Harris to go inside the store and ask Mr. Sizemore for a gas can. While Burke stayed in front of the gas station, appellant took his

sawed-off shotgun and went around to the back of the store. Mr. Sizemore went outside to show Burke where the gas can was, and when he did appellant darted inside the store.

Sixty-two-year-old Grace Foster was in the store shopping for groceries and appellant pointed the shotgun at her. When Mr. Sizemore re-entered the store, appellant covered him with the shotgun while Harris searched Mr. Sizemore and took his wallet. Mr. Sizemore told the robbers that he had heart trouble and they could have anything they wanted but begged them not to shoot him or hurt Mrs. Foster.

Appellant shoved Mr. Sizemore to the back of the room, made him lie down and hit him two times on the back of the head with the butt of the shotgun. When Mrs. Foster tried to run to Mr. Sizemore's side, appellant pointed the shotgun at her, threatened to shoot her and told her to keep her mouth shut. Although Mrs. Foster begged appellant to spare Mr. Sizemore, appellant turned to Mr. Sizemore, who was lying helpless on the floor, and fired a shotgun blast into his stomach. This wound caused Mr. Sizemore's death. William Austin, a route salesman for Mayfield Dairy Farms, entered the store to make a delivery and appellant also fired his shotgun at him.

While Harris was taking the money from Mr. Sizemore's cash register, appellant hit Mrs. Foster in the back of the head with the butt of his shotgun and knocked her unconscious. Appellant, or one of his companions, then placed his foot on Mrs. Foster's hand and tore her pocketbook out of her grasp. Mrs. Foster had a skull fracture above the eye, a brain concussion, cuts on her forehead and scalp, bruises, and scratches as a result of this beating. Her eyelids were swollen, both of her eyes were black, and ten stitches were required to close one of her cuts. After appellant and his companions left the store with $210 taken by them, Mr. Austin (the route salesman) went to Mr. Sizemore and tried to find a pulse but Mr. Sizemore was dead at that time from the shotgun blast.

## Continuance

Appellant contends the trial judge erred in refusing to grant his defense counsel's motion for a continuance of

the trial to a later date.

During January, or the early part of February, 1974, appellant's counsel at trial talked to him about representing him. Appellant indicated he wanted to employ this counsel to represent him. About the same time, another attorney contacted appellant's trial defense counsel and informed him that he had been appointed by the court to represent appellant but was inexperienced in criminal cases and asked appellant's counsel at trial either to assist him or try the case himself. The court was informed and agreed that appellant's counsel at trial should proceed either as employed counsel or as appointed counsel.

On February 26, appellant wrote his counsel about his case and how he intended to pay for his defense. Defense counsel represented appellant at the preliminary hearing and had an opportunity to familiarize himself with the prosecution evidence. Appellant had not furnished counsel with the names of any witnesses. The witnesses he finally named were subpoenaed for him if they were within the state. Appellant was permitted to make telephone calls to contact witnesses in Tennessee. However, appellant elected not to use, at trial, the witnesses he subpoenaed.

We find no abuse of discretion by the trial judge in refusing to grant a continuance under the facts of this case. See *Smith v. State,* 235 Ga. 620 (221 SE2d 41) (1975).

### Change of Venue

Appellant enumerates as error the overruling of his motion for change of venue made immediately prior to his trial. The basis for appellant's motion was his contention that extensive prejudicial pre-trial publicity concerning the crime in local newspapers and on television would prevent him from getting a fair trial in Walker County. However, the only evidence introduced in support of the motion was an article appearing on the front page of the Chattanooga Times on Wednesday, December 19, 1973, five months prior to the trial. From the discussion at the pre-trial hearings, it appears that the article reported that three suspects in the slaying of a groceryman were apprehended. Appellant, who was named in the article,

was identified as the trigger man. Moreover, the article related that a lie detector test indicated that appellant was not telling the truth about the crime. In addition, appellant testified regarding an incident that occurred while he was in jail awaiting trial when a state trooper entered the jail, asked for Dobbs and then threatened to kill him.

Defense counsel also asserted at the hearing that matters relating to the crime were covered extensively on television, but he did not describe the substance of the television programs nor did he provide the date or duration of any television broadcast concerning the crime.

At voir dire, it was determined that some of the prospective jurors had received information regarding the crime from newspaper or television reports. However, they did not have any significant recollection of the crime, their knowledge being confined to the fact that a grocery store owner was reported to have been killed in a robbery. Moreover, they all stated that they had no opinion about the case and that they could be fair and impartial jurors. Defense counsel did not move to strike any prospective juror for cause on the ground they had prejudged the appellant.

Appellant failed to establish his claim that an impartial jury could not be empaneled in Walker County. The voir dire indicates that pre-trial publicity did not prejudice the case against appellant. See *Jarrell v. State,* 234 Ga. 410, 415 (2) (216 SE2d 258) (1975); and, *Dutton v. State,* 228 Ga. 850, 851 (2) (188 SE2d 794) (1972). Nor was there evidence which would suggest that the general atmosphere in the community or courtroom was sufficiently inflammatory to impeach the professions of indifference by the prospective jurors. Murphy v. Florida, 421 U. S. 794, 95 SC 2031 (1975). United States v. Williams, 523 F2d 1203 (5th Cir., 1975), is clearly distinguishable from the present case and does not authorize a different result from that reached here. Consequently, the trial court did not abuse its discretion by denying appellant's motion for change of venue. *Jarrell v. State,* 234 Ga. 410, 415 (2), supra. Also, see *Allen v. State,* 235 Ga. 709, 712 (221 SE2d 405) (1975).

## Juror Selection

Appellant also asserts as error that "On voir dire, the trial judge erroneously and systematically excluded all prospective jurors generally opposed to capital punishment or who expressed conscientious or religious scruples against its infliction."

We have previously considered the standards of jury selection applicable in death cases as set forth in Witherspoon v. Illinois, 391 U. S. 510 (88 SC 1770, 20 LE2d 776), as amplified in Boulden v. Holman, 394 U. S. 478 (89 SC 1138, 22 LE2d 433), and Maxwell v. Bishop, 398 U. S. 262 (90 SC 1578, 26 LE2d 221). Witherspoon held that "a sentence of death cannot be carried out if the jury that imposed or recommended it was chosen by excluding veniremen for cause simply because they voiced general objections to the death penalty or expressed conscientious or religious scruples against its infliction." Witherspoon, supra, p. 522. "Such a venireman cannot be excluded unless he makes it unmistakably clear that he would vote against the death penalty regardless of what transpires at trial, or that his attitude on the death penalty would prevent him from impartially passing on the issue of guilt, or that he could not subordinate his personal feelings on the death penalty to his oath as a juror to obey the law of the state as charged by the trial court." Owens v. State, 233 Ga. 869, 871 (214 SE2d 173) (1975). See Ross v. State, 233 Ga. 361 (211 SE2d 356) (1974); Simmons v. State, 226 Ga. 110 (12) (172 SE2d 680) (1970); and, Miller v. State, 224 Ga. 627 (8) (163 SE2d 730) (1968).

A review of the voir dire transcript shows that four prospective jurors were excused for cause based on scruples against imposition of the death penalty. In each case the juror stated that she was unalterably opposed to capital punishment under all circumstances. We find no violation of the Witherspoon standards for jury selection under the facts of this case.

## Motion for Mistrial

Appellant also enumerates as error the overruling by the trial judge of defense counsel's motion for a mistrial. The motion for mistrial was based on testimony which appellant contends had the effect of implicating him in

another robbery and unlawfully placed appellant's character in issue at this trial.

The motion was based on the following colloquy during cross examination by the defense counsel: "Q. Now how long ago did Dobbs have a red car? A. About a week before—about a week or two weeks before we robbed Mr. Sizemore. Q. Well, did the red car have anything to do with this holdup? A. No, sir, but it had something to do with Mr. Lomenick's holdup."

The trial judge overruled the motion for mistrial but offered to instruct the jury to disregard the testimony and remove it from their minds. Defense counsel then stated to the court:

"Well, I agree that up to this point he probably has not connected the defendant with any other crime, but he's right on the borderline of it and I suggest that the witness be instructed as to the seriousness of his testimony in that regard. I don't even insist that the jury be instructed to disregard the testimony because I think probably it was stopped before they got into it far enough, but I do think it's very important this witness be instructed that he is not to testify concerning any other crimes whatsoever."

The trial judge instructed the witness pursuant to counsel's request and the trial proceeded without any similar occurrence. We agree with the defense counsel that the witness did not connect appellant with any other crime and no harm resulted to appellant by this isolated instance. Under the circumstances, the trial court did not err in overruling the motion for mistrial.

Constitutionality of Death Penalty

Appellant also contends the trial court erred in overruling defense counsel's constitutional objection to the Georgia death penalty statute. In *Coley v. State,* 231 Ga. 829 (204 SE2d 612) (1974), this court upheld the constitutionality of the Georgia Death Penalty Statute, Ga. L. 1973, pp. 159-172, and similar attacks on the constitutionality of the Act have been rejected by this court in subsequent cases. *Moore v. State,* 233 Ga. 861 (213 SE2d 829) (1975); *Ross v. State,* 233 Ga. 361 (211 SE2d 356) (1974); *Floyd v. State,* 233 Ga. 280, 284 (210 SE2d 810) (1974); *McCorquodale v. State,* 233 Ga. 369 (11) (211

SE2d 577) (1974); *Hooks v. State,* 233 Ga. 149 (3) (210 SE2d 668) (1974); *House v. State,* 232 Ga. 140 (205 SE2d 217) (1974). We are not persuaded that our prior decisions on the constitutionality of the Georgia statute should be reconsidered in the absence of a contrary determination by the U. S. Supreme Court in *Gregg v. State,* 233 Ga. 117 (210 SE2d 659) (1974), now under review before that court.

## Conclusion

Each of the enumerations of error asserted by appellant has been considered by this court and found to be without merit. Although appellant's conviction of the armed robbery of the murder victim has not been enumerated as error, we note that appellant's case stands on a different footing than the companion case of *Burke v. State,* 234 Ga. 512, supra. In the present case, appellant was indicted for malice murder and the evidence shows guilt beyond a reasonable doubt of both malice murder and armed robbery. Therefore, the convictions appealed from in this case must be affirmed.

## Sentence Review

In our sentence review we have considered the aggravating circumstances found by the jury and the evidence concerning the crime introduced in court.

We have reviewed the sentence as required by Ga. L. 1973, p. 159 et seq. (Code Ann. § 27-2537 (c) (1-3)), as we did in *Coley v. State,* 231 Ga. 829, supra, and each subsequent case involving the death penalty under this statute. We conclude that the sentence of death imposed here was not imposed under the influence of passion, prejudice, or any other arbitrary factor. The evidence supports the jury's finding of a statutory aggravating circumstance, i.e., that the offense of murder was committed while the offender was engaged in another capital felony (armed robbery). Code Ann. § 27-2534.1 (b) (2).

We have compared the evidence and sentence in this case with similar cases contained in the appendix attached to this opinion. Wilburn Wiley Dobbs' sentence to death for murder is not excessive or disproportionate to the penalty imposed in similar cases considering both the crime and the defendant.

*Judgment affirmed. All the Justices concur, except Gunter J., who dissents.*

ARGUED JANUARY 20, 1976 — DECIDED FEBRUARY 24, 1976 — REHEARING DENIED MARCH 11, 1976.

*Melvin Robinson,* for appellant.

*Earl B. Self, District Attorney, Jon B. Wood, Assistant District Attorney, Arthur K. Bolton, Attorney General, Harrison Kohler, Staff Assistant Attorney General,* for appellee.

APPENDIX.

Similar Cases Considered by the Court: *Lingo v. State,* 226 Ga. 496 (175 SE2d 657) (1970); *Johnson v. State,* 226 Ga. 511 (175 SE2d 840) (1970); *Pass v. State,* 227 Ga. 730 (182 SE2d 779) (1971); *Watson v. State,* 229 Ga. 787 (194 SE2d 407) (1972); *Callahan v. State,* 229 Ga. 737 (194 SE2d 431) (1972); *Kramer v. State,* 230 Ga. 855 (199 SE2d 805) (1973); *Hunter v. State,* 231 Ga. 494 (202 SE2d 441) (1973); *House v. State,* 232 Ga. 140 (205 SE2d 217) (1974); *Gregg v. State,* 233 Ga. 117 (210 SE2d 659) (1974); *Ross v. State,* 233 Ga. 361 (211 SE2d 356) (1974); *Moore v. State,* 233 Ga. 861 (213 SE2d 829) (1975); *Floyd v. State,* 233 Ga. 280 (210 SE2d 810) (1975); *Mitchell v. State,* 234 Ga. 160 (214 SE2d 900) (1975); *Jarrell v. State,* 234 Ga. 410 (216 SE2d 258) (1975); *Berryhill v. State,* 235 Ga. 549 (221 SE2d 185) (1975).