## 32926. THOMAS v. THE STATE.

JORDAN, Justice.

This is an out-of-time appeal by Counce Thomas, III, from his convictions of murder and two aggravated assaults, and his sentences of life imprisonment and two ten-year terms, to be served concurrently with the life imprisonment sentence.

The state's witness Franklin Johnson testified that: He was in a car with Yevonne Moultrie when Ben Thomas, the homicide victim, flagged him down. The witness took the victim to his home, then to the home of Connie Wilcox, sister of the appellant, and then back to his home. The victim got out of the car and stayed there talking. The appellant drove up, and two men were with him. The appellant got out of his car and walked up to the victim and hit him over the head with a gun, telling the victim, "Give me my money." The victim gave him some money. The victim then went into his house followed by the appellant and one of the men with him. The appellant had the gun in his hand. The witness heard four or five shots inside the house. The appellant and the man with him came back outside, and the appellant still had the gun. The appellant walked around to the passenger side of the witness' car, stuck the gun in the car, and fired it. Yevonne Moultrie was shot. The witness asked the appellant what was wrong with him, and the appellant fired again in the direction of the witness but did not hit him. The witness went into the house and saw Alice Thomas, the victim's wife, sitting in a chair, and she said that she had been shot. He walked back into the kitchen and found the victim lying on the floor in a pool of blood, apparently dead. The victim had a .38 caliber gun in his hand. The witness went back outside to assist Yevonne Moultrie. When he later went back in the kitchen the .38 caliber gun was gone.

Alice Thomas testified that: She was in her living room with her young daughter watching television. Her husband (the victim) and two men came in the house. She knew one of the men, the appellant. They walked straight through the house to the kitchen. They stayed there about three to five minutes and the two men came back through

the living room. The appellant turned around and pulled a gun out and shot her twice in the left arm. Franklin Johnson came to the door and asked where her husband was and she told him that she guessed he was in the kitchen. Johnson went in the kitchen and came back and told her that her husband was dead.

There was medical testimony that the victim's death was caused by a .45 caliber gunshot wound which pierced his heart and left lung. Ballistic tests showed that Mrs. Thomas was also wounded by a .45 caliber gun, and that the bullets were fired from the same weapon. The appellant left Albany, where the homicide occurred, immediately after the homicide and lived in Atlanta, Georgia, and Jacksonville, Florida, under two assumed names.

1. The appellant asserts that the verdict was not supported by the evidence. There was direct evidence that the appellant shot Mrs. Alice Thomas and Yevonne Moultrie, and sufficient circumstantial evidence that he shot Ben Thomas. The jury was authorized to find that he was guilty of the murder and two aggravated assaults.

2. The appellant enumerates as error the failure of the court to charge the jury on the defense of justification. He further contends that he did not receive adequate assistance of counsel in the trial of his case as the evidence shows that the defense of justification should have been raised in his behalf.

The appellant refers to the evidence that the victim had a gun in his hand when he was discovered by Franklin Johnson in a dying condition, and that a .38 caliber projectile was recovered from the scene of the shooting, although the victim was killed with a .45 caliber bullet.

The appellant testified that: On the evening of the homicide Clarence Gilley and Eric Gibson, from Jacksonville, Florida, came to his home. Gilley told him that he wanted to see Ben Thomas before he left and asked that the appellant go with him. While they were at the Thomas home Franklin Johnson, Yevonne Moultrie, and Ben Thomas drove up. The appellant, Gilley, and Ben Thomas went into the house. Gilley and Ben Thomas went to the back of the house, and the appellant heard shots. Gibson went into the back, and later Gilley and Gibson

came back to the living room where Alice Thomas was, both with guns in their hands. Gilley asked Alice Thomas where his money was. She started screaming and he asked her again where his money was, and she did not say anything. Gilley shot her and ran out of the house. The appellant thought she was dead and he left. When he came back to the house, Gibson came up behind him, and Franklin Johnson and Yevonne Moultrie were there, and they got out of the car because Gibson shot in the car. The appellant ran and Gibson shot at him. The appellant did not have a gun and did not know that anyone else had a gun when they went to the Thomas home.

The appellant in his brief asserts that he informed the attorneys who represented him prior to and during his trial that he wished to raise the defense of justification, but they informed him that this defense did not exist in the State of Georgia; and the appellant was then forced to deny all involvement in the crimes with which he was charged and he was denied the defense of justification.

In view of the appellant's testimony on the trial of the case that he was not present when the victim was shot, the trial judge was not required to charge on justification because of the evidence of the gun in the hand of the victim and the .38 caliber projectile.

The appellant defended on the trial on the sole theory that he did not commit the homicide. He cannot rely in his appeal on the assertion in his brief, supported by no evidence, that his counsel misled him as to his right to assert justification, thereby causing him to give false testimony as to his lack of participation in the homicide.

3. The appellant contends that it was an abuse of discretion for the trial judge to refuse to allow the appellant's sister, Connie Thomas Wilcox, to testify in his behalf because she had not been sequestered with the other witnesses. It is further contended that the appellant's counsel should have objected to this alleged abuse of discretion by the court.

Counsel for the appellant requested permission to call Connie Thomas Wilcox as a witness, stating that he had not intended to call her, and that she had heard most, if not all, of the testimony of Franklin Johnson. Counsel for the state objected to her testifying about anything

concerning the testimony of Franklin Johnson, but did not object to her testifying as to other matters. Whereupon counsel for appellant rested.

No offer was made by defense counsel at the trial to state what testimony would be given by the proffered witness. Present defense counsel in his brief states that she "would have indicated that it was she who removed the weapon from the hand of the deceased and that this fact was well known to the witness Johnson." The proffered witness was not present when the homicide occurred.

The trial judge is vested with a discretion in the enforcement of the sequestration rule. *Pearley v. State*, 235 Ga. 276, 277 (219 SE2d 404) (1975); *Wessner v. State*, 236 Ga. 162, 166 (3) (223 SE2d 141) (1976). There was no abuse of discretion in the present case.

*Judgment affirmed. All the Justices concur.*

ARGUED NOVEMBER 16, 1977 — DECIDED JANUARY 3, 1978.

*Malone & Percilla, Thomas Wm. Malone,* for appellant.

*William S. Lee, District Attorney, Daniel MacDougald, III, Assistant District Attorney, Arthur K. Bolton, Attorney General, Harrison Kohler, Assistant Attorney General,* for appellee.