## 35378. DAMPIER v. THE STATE.*

MARSHALL, Justice.

The appellant was convicted of murder, armed robbery, and motor vehicle theft. He received a sentence of death for murder, 20 years' imprisonment for armed robbery, and seven years' imprisonment for motor vehicle theft. His case is here on direct appeal and for mandatory review of the death sentence imposed.

From the evidence presented at trial, the jury was authorized to find the following:

On the morning of February 8, 1977, the appellant's father drove the appellant to a bus stop in order for him to keep an appointment with his probation officer. The appellant waited until his father had left and then, instead of boarding the bus, he went to see a 15-year-old female whom he had dated. The appellant and the young girl spent the day together. The girl received a call that afternoon from Albert Kenny Dickey, the co-defendant in this case. Dickey invited the two out to take various drugs. Telling her mother that they were going to purchase some cigarettes, the two left and met Dickey, who was parked on a nearby road waiting for them.

The three began to ride around and take various drugs, including marijuana and barbiturates. When they ran out of drugs, the two males began discussing a plan to obtain money. Dickey suggested that they rob the Exxon service station in Port Wentworth, Georgia. Prior to this, Dickey had attempted to talk the night attendant, Michael Hilton, into faking an armed robbery of the station and splitting the proceeds. Hilton had refused to go along with such a plan. Appellant and Dickey decided

*For Addendum to Dampier v. State, see page 882, post.

to carry Hilton to a secluded area and "get rid of him." The appellant noted that they were not armed, and he suggested where they could obtain a weapon. They proceeded to a friend's house, where the appellant secured a sawed-off shotgun along with five slugs and some marijuana. He retrieved his knife, and Dickey procured a 30-30 caliber rifle. The three then went to the Exxon station, where they talked to the victim and told him they would return later in the evening to smoke some marijuana. They did this in order to prevent the victim from being suspicious when they returned. The appellant and his two companions parked where they could observe the station, and they continued to take drugs. When they were sure that the police officer who patrolled the area had left, they approached the station.

In the early morning hours of February 9, 1977, the victim bagged the day's receipts from the station, and he was going to take a nap in his car. When the appellant and Dickey approached, he recognized them, and they talked. The appellant persuaded the victim to join them in the victim's white Honda automobile and smoke some marijuana. After they had entered the car, the appellant pulled out the sawed-off shotgun he had hidden in the sleeve of his coat. Dickey brandished the knife the appellant had given him, and he placed it against the victim. They then proceeded to rob the victim of approximately $150. The appellant then forced the victim to drive him to a secluded area while Dickey and the girl followed in Dickey's car. Once at a secluded rural area, the appellant forced the victim to get out of his car and walk into a wooded area. The victim begged the appellant not to beat him. When the victim realized he was going to be shot, he dropped to his knees and, placing his hands around his head, he begged for his life. The appellant hesitated for some five minutes while the victim pleaded for his life. During this time, Dickey kept encouraging the appellant to shoot. Finally, the appellant shot the victim in the face, killing him instantly. The appellant then reloaded the gun. Dickey asked for the gun, and then he shot in the direction of the victim's body.

The appellant then reloaded the weapon, and the three fled, taking the victim's car with them. Appellant

and his companions left the state and went to various states, including North Carolina. The following week, they returned to Chatham County, Georgia, where they were arrested at a local motel. When arrested, they had in their possession the shotgun which ballistics tests determined to be the murder weapon. They also had a hat belonging to the victim and the victim's car. Both the appellant and Dickey gave complete confessions to local authorities.

1. In the appellant's first and fourth enumerations of error, he argues that his convictions should be reversed on the general grounds. Having reviewed the evidence in the light most favorable to the jury's verdict, we conclude that a rational trier of fact was authorized to find the appellant guilty of the crimes charged beyond a reasonable doubt. Jackson v. Virginia, — U. S. — (99 SC 2781, 61 LE2d 560) (1979); *Crawford v. State,* 245 Ga. 89 (1980). These enumerations of error are without merit.

2. After their capture, North Carolina authorities charged the three with the stabbing death of a grandmother and her three-year-old granddaughter. In his fifth enumeration of error, the appellant argues that the trial court erred in failing to grant his motion in limine, which sought to prevent any mention of the words "North Carolina" during the trial. However, the trial court did rule that the prosecution had to limit the state's evidence to the crimes occurring in Chatham County, Georgia. Although the district attorney did not introduce evidence of separate crimes committed in North Carolina, he did submit evidence, over objection, that the appellant had gone to that state and that the officers of that state had questioned him while he was in custody in the Chatham County Jail. The appellant argues that due to the pretrial publicity, any mention of North Carolina would allow the jury to infer evidence of an independent crime. We do not agree. The evidence submitted was relevant to flight and to the voluntariness of the appellant's confession and was, therefore, admissible. *Hughes v. State,* 239 Ga. 393 (236 SE2d 829) (1977). (See Division 5, infra.)

3. In his sixth enumeration of error, the appellant contends that the trial court erred in failing to grant a

motion to suppress his confession on the grounds that it was not given freely and voluntarily and that it was made without benefit of counsel or with a knowing and intelligent waiver thereof.

The appellant was arrested on a weekend and, as is local practice, an attorney was not appointed to represent him until the following Monday. The appellant gave his statement on Sunday, one day after his arrest and immediately after being interrogated by North Carolina authorities. Initially, the appellant requested an attorney before making any statement. However, after talking to detectives from North Carolina, he asked to speak to local authorities the following day, Sunday. He then waived his right to counsel and gave a complete confession.

Before admitting the appellant's confession in evidence, the trial court held a Jackson-Denno (378 U. S. 368) hearing to determine its admissibility. The trial court found the statements to have been freely and voluntarily given. Unless clearly erroneous, a trial court's factual determinations relating to the credibility of witnesses and the admissibility of confessions will be upheld on appeal. United States v. Watson, 469 F2d 362 (5th Cir. 1972); *Crawford v. State,* supra; *Hurt v. State,* 239 Ga. 665 (2) (238 SE2d 542) (1977). The appellant's statements to the local authorities, in which he waived his rights prior to making his inculpatory statement, were sufficient to support the trial court's ruling. *Crawford v. State,* supra. The trial court did not err in overruling the appellant's motion to suppress.

4. In the seventh enumeration of error, the appellant argues that the trial court erred in failing to grant his motion for reappointment of a psychiatrist and reexamination of the appellant's mental condition.

Upon request, the appellant was granted a psychological examination by a state-appointed psychiatrist. In his motion for a mental examination, the appellant asked that his mental condition be determined as to his ability at the time of the commission of the crime to distinguish between right and wrong; his ability to understand the nature of the charges and help in his defense; and whether, due to mental disease, injury or congenital deficiency, he was suffering under a delusional

compulsion when he committed the crimes charged. A team of experts from Central State Hospital interviewed the appellant and the co-defendant, Dickey. They concluded in identical reports that both persons were sane at the time of the commission of the crime and were able to participate in their defense.

The appellant complains that these reports were merely perfunctory. Therefore, the appellant argues that the trial court abused its discretion in not ordering another examination, and that this violated his constitutional rights.

The granting or denial of a motion for appointment of an expert witness lies within the sound discretion of the trial court and will not be overturned on appeal unless there has been an abuse of discretion. *Holsey v. State,* 235 Ga. 270 (3) (219 SE2d 374) (1975). See generally *Patterson v. State,* 239 Ga. 409 (238 SE2d 2) (1977); *Welch v. State,* 237 Ga. 665 (8) (229 SE2d 390) (1976). Furthermore, where, as here, there was no special or general plea of insanity, the trial court did not abuse its discretion in denying the initial motion for psychiatric evaluation. *Lewis v. State,* 239 Ga. 732 (2) (238 SE2d 892) (1977); *Chenault v. State,* 234 Ga. 216 (1) (215 SE2d 223) (1975). Therefore, it follows that the trial court, likewise, did not abuse its discretion in not granting the appellant's motion for reappointment and reexamination when he objected to the initial psychiatric report.

5. The appellant in his eighth enumeration of error argues that the trial court erred in failing to grant a change of venue based on pretrial publicity. We do not agree.

The test as to whether pretrial publicity has so prejudiced a case that an accused can not receive a fair trial is whether the jurors summoned to try the case have formed fixed opinions as to guilt or innocence of the accused from reading such publicity. *Welch v. State,* 237 Ga. 665, supra, (1). Of the 40 prospective jurors examined, only eight had read or heard any pretrial publicity, and two of those did not remember what they had read. The six other prospective jurors indicated that they could lay aside any impression or opinion which they may have formed and render an opinion based upon the evidence.

Irvin v. Dowd, 366 U. S. 717 (81 SC 1639, 6 LE2d 751) (1961). No venireman was excused for prejudice on the basis of pretrial publicity. Irvin v. Dowd, supra; Murphy v. Florida, 421 U. S. 794 (95 SC 2031, 44 LE2d 589) (1975); *Coleman v. State,* 237 Ga. 84 (226 SE2d 911) (1976); *Butler v. State,* 231 Ga. 276 (201 SE2d 448) (1973), cert. den. 420 U. S. 907 (1973). The record shows that while there was a large amount of pretrial publicity, it was factual and for the most part not editorialized. The appellant has failed to produce evidence that the members of the traverse jury had fixed opinions as to the appellant's guilt based on pretrial publicity.

6. The appellant, in his ninth enumeration of error, complains that the trial court erred in failing to sequester the district attorney and his assistant district attorney during the Jackson-Denno hearing. Defense counsel placed both district attorneys who were trying the case under subpoena, and at the hearing he moved for the rule of sequestration. Code § 38-1703.

The trial court is vested with a broad discretion in the enforcement of the sequestration rule. *Thomas v. State,* 240 Ga. 441 (3) (241 SE2d 194) (1978); *Wessner v. State,* 236 Ga. 162 (3) (223 SE2d 141) (1976), cert. den. 426 U. S. 910 (1977); *Jarrell v. State,* 234 Ga. 410 (6) (216 SE2d 258) (1975). Both prosecutors whom the appellant sought to sequester were representing the state in the trial of the case, as required by statute. Code § 24-2908 (1), (4). To have excluded either while the other testified would have impaired the efficiency of the court. *Massey v. State,* 220 Ga. 883, 893 (5) (142 SE2d 832) (1965). We find that the trial court did not abuse its discretion. This enumeration of error is without merit.

7. In his tenth enumeration of error, the appellant argues that to qualify potential jurors as to their being conscientiously opposed to capital punishment violated his right to an impartial jury under the 6th and 14th Amendments to the United States Constitution and Code Ann. § 59-106. The appellant's argument is clearly without merit. Witherspoon v. Illinois, 391 U. S. 510 (88 SC 1770, 20 LE2d 776) (1968); Spinkellink v. Wainwright, 578 F2d 582 (5th Cir. 1978); *Harris v. Hopper,* 243 Ga. 244 (253 SE2d 707) (1979).

8. The appellant further contends in his eleventh enumeration of error that the trial court erred in striking three jurors for cause on the ground that they were conscientiously opposed to capital punishment. The transcript establishes that the jurors' opposition to capital punishment met the Witherspoon test as reiterated in Lockett v. Ohio, 438 U. S. 586 (98 SC 2954, 57 LE2d 973) (1978). The three prospective jurors were properly stricken. *Harris v. Hopper,* supra.

9. In his twelfth enumeration of error, the appellant argues that the trial court erred in replacing excused veniremen by picking random names toward the end of the jury list, rather than picking the next name on the list. The appellant cites no authority for his position, and we have found none. He makes no contention that the persons selected were not competent veniremen properly drawn to sit on the panel. A defendant is entitled to an array of properly drawn, impartial jurors to which he may direct his peremptory challenges. A party is entitled to this as a matter of right; but, conversely, he is entitled to no more. *Rucker v. State,* 135 Ga. App. 468 (2) (218 SE2d 146) (1975). The trial court did not err in calling replacement veniremen from the jury list in random order.

10. The appellant contends that the trial court erred in allowing the state to play the tape of the appellant's confession to the jury rather than have a witness read a transcript of the taped confession. He asserts that the tape recording involuntarily placed his character in issue, because it referred to "prison," "parole," and "back to the joint," thereby raising an inference that the appellant had a prior record. He further argues that these above-referred-to terms could have been deleted from a transcribed version of the confession and, therefore, a written copy should have been used. We do not agree. All references to "prison, parole and the joint," which the appellant made during his confession, either explained motive, intent, course of conduct or were part of statements made to the victim in order to lure him into his car. As such, the statements were material and admissible. Material evidence is not rendered inadmissible merely because it incidentally places a defendant's character in issue. *Hudson v. State,* 237 Ga.

443, 444 (228 SE2d 834) (1976). Furthermore, the statements complained of were an integral part of a criminal confession, and such statements are not rendered inadmissible because the language used therein indicates that the accused had committed another and separate offense. *Berryhill v. State,* 235 Ga. 549 (6) (221 SE2d 185) (1975); *Calhoun v. State,* 210 Ga. 180 (2a) (78 SE2d 425) (1953).

11. In the fourteenth enumeration of error, the appellant contends that the trial court erred in not charging defendant's request to charge No. 6.

The co-defendant, Dickey, was tried first and given a life sentence. At his trial, he swore that the appellant killed the victim, and his testimony was essentially the same as the appellant's confession. Dickey was called as a defense witness in the instant case and testified that he, not the appellant, shot the victim. He further stated that he perjured himself at his trial in order to avoid the death penalty.

The appellant requested the following charge: "I charge you that if a witness swore falsely under fear of his own life and now swears truly, a jury may credit his testimony irrespective of his responsibility for yielding to his fears on a former occasion." The appellant cites *Burns v. State,* 89 Ga. 527 (15 SE 748) (1892) as authority for this charge. In *Burns,* the court was concerned with a witness who had sworn falsely out of fear of threats by third parties, not out of fear of lawful punishment, as is the case here. See *McCoy v. State,* 78 Ga. 490 (3 SE 768) (1887). Accordingly, the request to charge was an incorrect statement of the law as applicable to this case, and the judge properly refused to so instruct the jury. *Garmon v. State,* 219 Ga. 575 (6) (134 SE2d 796) (1964).

12. During the prosecutor's cross examination of Dickey, who had already been tried and convicted, the prosecutor asked, ". . . suppose he [Dampier] had gone to trial first before you, would you have walked in the courtroom and said 'I did it, not him'?" Defense counsel objected to the question on the ground that it called for a conclusion. In his sixteenth enumeration of error, the appellant contends that the trial court committed error in overruling the foregoing objection.

The witness had admitted that he had committed perjury at his trial. The question related to that fact and was, therefore, material and relevant. It did not call for a conclusion on the part of the witness. The scope of cross examination rests largely within the discretion of the trial judge, and his discretion will not be controlled by the reviewing court unless abused. Code § 38-1705; *Post v. State,* 201 Ga. 81 (39 SE2d 1) (1946). We find no abuse here.

13. In the instant case, the trial judge instructed the jury during the guilt-innocence phase of the trial that they were authorized to convict the appellant of murder if they found either malice murder or that the murder was committed in the commission of a felony. Code Ann. § 26-1101 (a) and (b). The appellant was indicted for malice murder. The jury was not instructed that if they found felony murder they could not also convict on the underlying felony, it being a lesser included offense of felony murder. *Collier v. State,* 244 Ga. 553 (1979). The jury returned a verdict for murder, not specifying malice or felony murder; and the jury also returned a verdict of guilty of armed robbery.

The appellant, in his seventeenth enumeration of error, complains of the verdict and sentence of armed robbery, and he contends it was a lesser included offense of murder in this case. We agree. The evidence in this case authorized a verdict of felony murder, and the appellant must be given the benefit of the doubt. The supporting felony in this case, armed robbery, would be the lesser included offense, and the verdict and sentence thereon must be vacated. *Reed v. State,* 238 Ga. 457 (7) (233 SE2d 369) (1977).

14. Upon review of the trial court's sentencing charge, we have concluded that the trial court's instructions to the jury do not suffer from the defects addressed in *Hawes v. State,* 240 Ga. 327 (240 SE2d 833) (1977) and *Fleming v. State,* 240 Ga. 142 (240 SE2d 37) (1977). A reasonable juror, considering the charge as a whole, would know that he should consider all the facts and circumstances of the case as presented during both phases of the trial, including any mitigating and aggravating facts. Then, even though he might find one or

more statutory aggravating circumstances to exist, he would know that he might recommend life imprisonment. The appellant's eighteenth enumeration of error is without merit.

15. In his fifteenth enumeration of error, the appellant complains that the trial court erred in allowing the district attorney to cross examine the defendant during the sentencing phase of the trial as to statements he made to North Carolina officials.

This cross examination was undertaken in response to the defendant's assertion that "he had never harmed anyone." The appellant argues that the court should have required a Jackson-Denno hearing prior to allowing the prosecutor to question the defendant about any prior statements he may have made to North Carolina officials. However, the prosecution did not attempt to introduce any prior confession of the appellant; and he was prohibited by the trial judge, upon objection, from doing so. The only questioning allowed was, "Did you ever sign a statement otherwise?" (that you never hurt anyone). The state then, without objection, called a North Carolina official, who testified that ". . . he [did] admit . . . that he had harmed someone in North Carolina."

The appellant's failure to object below to the admission of the complained-of testimony constitutes a waiver, and the appellant can not now complain on appeal. *Alderman v. State,* 241 Ga. 496 (246 SE2d 642) (1978). Notwithstanding, even if considered on its merits, the appellant's enumeration of error is without merit. The appellant argues that the statement made to the North Carolina officers was made in violation of Miranda v. Arizona, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966) and Brewer v. Williams, 430 U. S. 387 (97 SC 1232, 51 LE2d 424) (1977). However, such statements, even if inadmissible as part of the state's case-in-chief, are still admissible for impeachment purposes. Harris v. New York, 401 U. S. 222 (91 SC 643, 28 LE2d 1) (1971); Oregon v. Hass, 420 U. S. 714 (95 SC 1215, 43 LE2d 570) (1975). However, in the instant case, the state did not impeach the defendant by putting his prior statement in evidence. Rather, the defendant was impeached by showing the fact that he had made a contrary statement. The trial court,

therefore, did not err in admitting the testimony.

16. Sentence Review. In our sentence review, we have considered the aggravating circumstances found by the jury and the evidence concerning the crime and the defendant. We have reviewed the sentence, as required by Ga. L. 1973, p. 159 et seq. (Code Ann. § 27-2537 (c) (1-3)), as we have in each case involving a death penalty under this statute.

Upon review of the record and transcript, we find that the sentence of death imposed on Kenneth Dampier was not imposed under the influence of prejudice or any other arbitrary factor.

The jury found the following statutory aggravating circumstances: (1) The offense of murder was committed while the defendant was engaged in the commission of another capital felony, namely armed robbery. Code Ann. § 27-2534.1 (b) (2); and (2) The offense of murder was outrageously or wantonly vile, horrible or inhuman in that it involved torture, depravity of mind, or aggravated battery to the victim. The evidence supports the jury's finding beyond a reasonable doubt of the statutory aggravating circumstances, and the verdict and sentence are factually substantiated.

The appellant's co-defendant, Albert Kenny Dickey, received a life sentence. The question is presented whether the appellant's sentence is disproportionate, considering the crime and the defendant in light of the lesser sentence imposed on the co-defendant.

There is no simplistic rule that a co-defendant may not be sentenced to death when another co-defendant receives a lesser penalty. *McClesky v. State,* 245 Ga. 108 (1980); *Collins v. State,* 243 Ga. 291 (253 SE2d 729) (1979). We find distinctions between the appellant's case and the case of his co-defendant. First, the appellant was the actual perpetrator of the murder. He shot the victim after listening to him beg for his life for five minutes. Second, he furnished the murder weapon and lured the victim into his car. Under the evidence, the defendant was primarily responsible for the death of the victim. Juries under similar circumstances have sentenced "triggermen" to death while the same penalty has not been imposed on co-defendants. These cases have been

affirmed by this court. *McClesky v. State,* 245 Ga. 108, supra; *Bowden v. State,* 239 Ga. 821 (238 SE2d 905) (1977); *Pulliam v. State,* 236 Ga. 460 (224 SE2d 8) (1976); *Dobbs v. State,* 236 Ga. 427 (224 SE2d 3) (1976); *Ross v. State,* 233 Ga. 361 (211 SE2d 356) (1974).

We find that the appellant's sentence to death is not excessive or disproportionate to the penalty imposed in the case of his co-defendant.

In reviewing the death penalty in this case, we have considered the cases appealed to this court since January 1, 1970, in which a death or life sentence was imposed. We find that the similar cases listed in the appendix support the affirmance of the death penalty in this case.

The appellant's sentence to death for murder is not excessive or disproportionate to the penalty imposed in similar cases considering the crime and the defendant.

*Judgment affirmed in part; reversed in part. All the Justices concur.*

ARGUED SEPTEMBER 12, 1979 — DECIDED FEBRUARY 20, 1980 — REHEARING DENIED MARCH 13, 1980.

*Hendrix & Shea, John W. Hendrix, Penny J. Haas,* for appellant.

*Andrew J. Ryan, III, District Attorney, Arthur K. Bolton, Attorney General, W. Davis Hewitt, Staff Assistant Attorney General,* for appellee.

APPENDIX.

*Lingo v. State,* 226 Ga. 496 (175 SE2d 657) (1970); *Johnson v. State,* 226 Ga. 511 (175 SE2d 840) (1970); *Hunter v. State,* 231 Ga. 494 (202 SE2d 441) (1973); *Gregg v. State,* 233 Ga. 117 (210 SE2d 659) (1974); *Floyd v. State,* 233 Ga. 280 (210 SE2d 810) (1974); *Tamplin v. State,* 235 Ga. 20 (218 SE2d 779) (1975); *Dobbs v. State,* 236 Ga. 427 (224 SE2d 3) (1976); *Goodwin v. State,* 236 Ga. 339 (223 SE2d 703) (1976); *Birt v. State,* 236 Ga. 815 (225 SE2d 248) (1976); *Stanley v. State,* 240 Ga. 341 (241 SE2d 173) (1977); *Campbell v. State,* 240 Ga. 352 (240 SE2d 828) (1977); *Moore v. State,* 240 Ga. 807 (243 SE2d 1) (1978); *Westbrook v. State,* 242 Ga. 151 (249 SE2d 524) (1978);

*Ruffin v. State,* 243 Ga. 95 (252 SE2d 472) (1979); *Amadeo v. State,* 243 Ga. 627 (255 SE2d 718) (1979); *Tucker v. State,* 244 Ga. 721 (261 SE2d 635) (1979).