46191.  JENKINS v. THE STATE.

Submitted May 7, 1971—Decided May 17, 1971—
Rehearing denied May 25, 1971—Cert. applied for.

*Cook & Palmour, A. Cecil Palmour,* for appellant.
*Earl B. Self, District Attorney,* for appellee.

Hall, Presiding Judge. Without the presence of the jury, the court heard testimony on the surrounding circumstances, then

ruled that the statement was voluntary. The testimony was given by the FBI agent who apprehended defendant in Florida. He said that he found defendant in the doorway of his apartment, ordered him out of the house, handcuffed him and then informed him of his constitutional rights by reading from a printed card. The agent said that defendant told him he knew what his rights were and would not sign anything or talk about anything. They then drove for an hour and a half to reach FBI headquarters. During that time there was some conversation but no questioning. Upon reaching headquarters, defendant was fingerprinted, photographed and then taken by two agents to an interview room in order to elicit "background and descriptive information" (i.e. name, birth date and place, height, weight, hair color, marital status, names of relatives, etc.). The agent testified that the atmosphere was relaxed and that after about a half hour, defendant spontaneously, not in response to any question, said words to the effect: I wish the trooper would have died. That way I would probably only get seven years. Now, I will probably get twenty.

Defendant contends that having invoked his right to remain silent, the agents' creation of a relaxed atmosphere and then the provocation to answer myriad personal background questions was subtle compulsion as proscribed by Miranda v. Arizona, 384 U. S. 436 (86 SC 1602, 16 LE2d 694, 10 ALR3d 974); and therefore any statement he made could not be considered voluntary.

There have been many cases applying Miranda, and each, by necessity, has been determined on its peculiar facts. It is of no assistance to weigh the numbers holding one way or another. Miranda appears to lay down a clear rule: "Once warnings have been given, the subsequent procedure is clear. If the individual indicates in any manner, at any time prior to or during questioning, that he wished to remain silent, the interrogation must cease. At this point he has shown that he intends to exercise his Fifth Amendment privilege; any statement taken after the person invokes his privilege cannot be other than the product of compulsion, subtle or otherwise. Without the right to cut off questioning, the setting of in-custody interrogation operates on the individual to overcome free choice in producing a statement after the privilege has been once invoked. If the individual states that

he wants an attorney, the interrogation must cease until an attorney is present . . . Any statement given freely and voluntarily without any compelling influences is, of course, admissible in evidence. The fundamental import of the privilege while an individual is in custody is not whether he is allowed to talk to the police without the benefit of warnings or counsel, but whether he can be interrogated." Miranda v. Arizona, supra, pp. 473, 478.

The Supreme Court clearly believed "interrogation" to be the key to the violation of rights. The issue here, as in a few other cases, is what constitutes interrogation. Certainly we cannot restrict the meaning to a lengthy grilling on the suspect's direct participation in the crime. On the other hand, it is not merely "a question put" or "an inquiry" (Webster's New International Dictionary). E.g., "Would you like to have a lawyer appointed?" is the reverse of overbearing custodial interrogation.

In discussing the type of questioning involved in "booking procedure," Professor Yale Kamisar has said, "Although the question is not entirely free from doubt, it seems that . . . routine police 'questioning' *not related to the investigation of the case nor designed, expected or likely to elicit information relevant to guilt* may not amount to 'custodial interrogation' within the meaning of Miranda. . . [A]bsent special circumstances, such questions as 'Where do you live?' or 'Do you want us to get you a sandwich?' do *not* add to the pressures generated by police custody and therefore *unresponsive* incriminating statements made in reply to such questions should be viewed as equivalent to 'blurted out' statements." Kamisar, "Custodial Interrogation Within the Meaning of Miranda," in Criminal Law and the Constitution, pp. 358, 360 (1968). For cases supporting this view see: Parson v. United States, 387 F2d 944; United States v. DeBose, 410 F2d 1273; Clarke v. State, 3 Md. App. 447 (240 A2d 291); Bozell v. State, 6 Md. App. 194 (250 A2d 674); Brown v. State, 222 S. 2d 793 (Fla.); State v. Mayhew, 170 N. W. 2d 608 (Iowa); Commonwealth v. Rawlins, 352 Mass. 293 (225 NE2d 314); People v. Lowe, 122 Ill. App. 2d 197 (258 NE2d 370).

One California case cited by defendant which takes a strong, opposite position can be distinguished on the facts. There, the questioning which occurred after the defendant had invoked si-

lence took the form of asking if he would like to reconsider making a statement. Since the police had just staged an emotional confrontation with two other boys who had implicated the defendant, the query was obviously designed to elicit a confession, even though "subtly or gently" phrased. People v. Fioritto, 68 Cal. Rptr. 817 (441 P2d 625).

Under the evidence here, the worst construction of the situation would be that the agents somewhat prolonged the booking procedure, asking for more information than was strictly necessary, and deliberately created a relaxed atmosphere in the *hope* that defendant might let something slip. We do not believe this was an overbearing custodial interrogation which deprived him of free choice in making a statement.

However, we must also stress that we do not hold that the booking procedure per se is exempt from the category of custodial interrogation. Again, the facts of each situation would be determinative. Several hours of questioning on "background and descriptive information" would most likely produce an atmosphere of subtle compulsion; and certainly direct interrogation on the crime would be forbidden although it occurred during fingerprinting or some other formality.

There is a certain amount of legitimate enquiry which the police may make when preparing to incarcerate a suspect. In turn, the suspect may refuse to answer even the "name, rank and serial number" type of question. In that event, the questioning must cease. However, if the suspect is willing to divulge personal information, even though he has invoked silence concerning the crime, then an admission which occurs during unrelated questioning (of legitimate type and duration) is voluntary within the meaning of the Miranda case.

*Judgment affirmed. Eberhardt and Whitman, JJ., concur.*