## 33934. TANNER v. THE STATE.

NICHOLS, Chief Justice.

Tanner appeals his conviction for the murder of his former father-in-law. He received a life sentence. The evidence will not be summarized because the general grounds were not argued.

1. After jury deliberations had begun, and after the jury had been told that arrangements would be made for them to stay overnight, a juror informed the court that she had to go home to take care of her sick husband. The court excused her and substituted in her place the alternate juror. Tanner contends that the trial court erred in substituting the alternate juror for the juror who was permitted to be excused after deliberations had begun. This substitution was made pursuant to Code Ann. § 59-910, which provides: "If at any time, whether before or after final submission of the case to the jury, a juror dies or becomes ill, or upon other good cause shown to the court is found to be unable to perform his duty, or is discharged for other legal cause, the first alternate juror shall take the place of the first juror becoming incapacitated . . ." Tanner argues that the statute violates Art. I, Sec. I, Par. XI of the 1976 Constitution of Georgia (Code Ann. § 2-111) and the Sixth Amendment to the Constitution of the United States.

Pretermitting the question of whether defense counsel failed to make timely objection to the juror's substitution, this court holds that Code Ann. § 59-910 does not deny the accused's constitutional right to an impartial jury. The cases relied upon by Tanner are based on the Federal Rules of Criminal Procedure and the laws and constitutions of other jurisdictions. See People v. Ryan, 19 N. Y. 2d 100 (278 NYS2d 199, 224 NE2d 710)(1966); People v. Collins, 17 Cal. 3d 687 (131 Cal. Rptr. 782, 552 P2d 742) (1976); United States v. Lamb, 529 F2d 1153 (1975). These cases neither are binding upon us nor are they persuasive in their analysis. Alternate jurors have the same qualifications as regular jurors (Code Ann. § 59-907), take the same oath as regular jurors, obey all court orders and admonitions, hear and see the proceedings, and otherwise conduct themselves as

regular jurors (Code Ann. § 59-908), except that they do not retire with the regular jurors to deliberate the case. Code Ann. § 59-909. When an alternate later is admitted to the panel of twelve in substitution for an original, he has full access to previous deliberations and may apprise himself of what has transpired in his absence by asking appropriate questions or by listening to the deliberations. We shall presume that he casts his vote knowingly and intelligently. Our statute promotes the important state interest of judicial efficiency by avoiding unnecessary retrials when a juror who is participating in a case becomes unable to continue. This enumeration of error is without merit.

2. Tanner next contends that the trial court erred in asking the jurors about their numerical standings in the presence of the alternate juror and before the substitution of the alternate juror. The trial court merely was attempting to ascertain the numerical division of the jurors without their divulging whether they were for guilt or innocence. The trial court specifically asked the foreman not to indicate the jury's disposition as to guilt or innocence. In disregard of the court's request, the foreman answered: "Three undecided, one not guilty, and the rest guilty." When the trial court does not *seek* to obtain information as to the jury's numerical division *between guilt and innocence,* the foreman's volunteering the information not sought does not require reversal. *Wilson v. State,* 145 Ga. App. 315, 318 (4) (244 SE2d 355) (1978). Tanner could not have been harmed by the alternate juror's discovering immediately before entering the jury room what he surely would have discovered soon after entering the jury room. See *Huffaker v. State,* 119 Ga. App. 742 (2) (168 SE2d 895) (1969). This enumeration of error is without merit.

3. Tanner contends the trial court erred in admitting into evidence certain exhibits over his objection that they were not relevant and were introduced solely to inflame and prejudice the jury. This evidence consisted of pieces of clothing worn by the victim on the night he was killed, photographs of the scene of the crime, and photographs of the wounds received by the victim. The trial court did not err in allowing these exhibits into evidence. *Vinson v.*

*State,* 127 Ga. App. 607 (194 SE2d 583) (1972); *Floyd v. State,* 233 Ga. 280, 283 (210 SE2d 810) (1974); *Lamb v. State,* 241 Ga. 10 (243 SE2d 59) (1978).

4. Tanner urges that the trial court erred in denying him a Jackson-Denno hearing to determine whether his statement regarding the victim that "He had it coming," was voluntary.

The district attorney was examining Detective Kinney about whether or not Tanner had been advised of his Miranda rights. Detective Kinney was responding in the affirmative when defense counsel interrupted requesting a Jackson-Denno hearing. The court granted the motion and excused the jury. The district attorney then continued the line of questions, establishing these facts: Detective Kinney read Tanner his rights. Tanner acknowledged orally and by signing the form that he understood his rights. Tanner's signature was duly witnessed. Tanner had been drinking but was having no trouble walking and was able to hear and to respond to questions with understanding. Tanner then requested to be taken to the bathroom. Upon cross examination of Detective Kinney, defense counsel established that Tanner's speech was slurred. However, Detective Kinney swore he knew Tanner and, based on his experience with Tanner, he knew Tanner knew what was happening. During cross examination of Detective Kinney, defense counsel explained to the court, "Judge, I don't want to be time consuming here, but I believe this evidence [as to Tanner's level of intoxication] will be relevant to any later statement that might be attempted to be introduced." (Matter in brackets added.)

The Jackson-Denno hearing terminated after the examination and cross examination of Detective Kinney and, thereafter, with the jury present, the district attorney examined Detective Wilson about any conversations he might have had with Tanner. Wilson testified that he had taken Tanner to the men's room upon Tanner's request and that as they were returning to the interrogation room, Tanner asked him about the victim. Wilson told Tanner the victim had died. The district attorney asked Wilson, "What remark, if any, did the defendant make about Mr. Roper being dead?" Before

Wilson answered, defense counsel objected and requested a second Jackson-Denno hearing. The trial court denied the motion and let Detective Wilson answer the question because Wilson had not propounded any question to Tanner; rather, Tanner had responded to Wilson's having told him that the victim was dead, which statement by Wilson was in response to Tanner's inquiry about the victim. Wilson's answer was that Tanner had said of the victim, "He had it coming."

The trial court did not err in denying Tanner's motion for a second Jackson-Denno hearing. The previous Jackson-Denno hearing had established that Tanner had been advised of his rights. The transcript shows without contradiction that Tanner did not request legal counsel until after his remark to Detective Wilson. The previous Jackson-Denno hearing also had established that although Tanner had been drinking, he was sufficiently coherent for his statement to be a product of rational intellect and free will. Accordingly, the trial court did not violate the "coherency test." *Allen v. State,* 231 Ga. 17, 18 (2) (200 SE2d 106) (1973). Defense counsel did not object to the district attorney's laying in the presence of the jury a foundation for introduction of the statement. Rather, he allowed the foundation to be laid in the presence of the jury and then objected and moved for a Jackson-Denno hearing immediately before Detective Wilson started to tell the jury that Tanner had said the victim "had it coming." This court previously has held that when defense counsel allows the foundation for introduction of the statement to be laid before the jury, he cannot thereafter object to the admission of the statement on the ground that its admissibility had not been determined outside the presence of the jury. *Pierce v. State,* 238 Ga. 682 (235 SE2d 374) (1977). It should be noted that defense counsel had acknowledged on the record during the Jackson-Denno hearing the relevancy of Detective Kinney's testimony about the level of Tanner's intoxication. This court can see no purpose in holding a second Jackson-Denno hearing under the facts of this case and, accordingly, the trial court did not err in declining to hold the second hearing. Furthermore, it should be noted that Tanner's statement not only was proven to be

voluntary but was volunteered as distinguished from having been made in response to police interrogation. *Jenkins v. State,* 123 Ga. App. 822 (182 SE2d 542) (1971).

None of Tanner's enumerations of error has merit. Accordingly, the judgment below is affirmed.

*Judgment affirmed. All the Justices concur.*

ARGUED SEPTEMBER 13, 1978 — DECIDED OCTOBER 25, 1978.

*Patton & Hoyt, John R. Hancock,* for appellant.

*Larry F. Salmon, District Attorney, Arthur K. Bolton, Attorney General, Michael R. Johnson,* for appellee.