## 35997. LEWIS v. THE STATE.

PER CURIAM.
William Spicer Lewis, III, the appellant, was convicted of the offenses of murder, armed robbery and motor vehicle theft by a jury in the Superior Court of Muscogee County. He was sentenced to death for murder. The case is before this court on appeal and for mandatory review.

From the evidence submitted at trial, the jury was authorized to find the following facts:

During the night of March 31, 1979, or the early morning hours of April 1, 1979, a 1977 Pontiac automobile was stolen from the Lynwood American Service Station located in Columbus, Georgia.

Close to midnight on April 3, 1979, the appellant, age 16, and a co-defendant, Robert Scott Jackson, age 15, entered a Majik Market also located in Columbus, Georgia. Mrs. Doris Kennedy was the only employee in the store at that time. She was sweeping the store when she noticed Jackson come in. Thereafter, appellant entered with his face partially covered with a scarf and a .38 caliber pistol in his hand. Appellant ordered Mrs. Kennedy to go behind the cash register. Jackson followed, and stood in front of the counter, posing as a customer. Mrs. Kennedy was forced at gunpoint to open the cash register. When she did, Jackson, who was unarmed, reached across and took a twenty dollar bill. That particular bill triggered a silent alarm when it was removed. Jackson told her to put the money, except the dimes and nickels, into a paper sack, which she did. The appellant then ordered Mrs. Kennedy into a large walk-in beverage cooler. While the robbery was transpiring, a couple entered the store. Appellant approached them and ordered them at gunpoint into the cooler. The cooler was glass-faced and had racks

---

holding beverages and other items. It was possible to see the interior of the store from inside the cooler.

Officer James N. Bowers of the Columbus Police Department had just come off duty and was returning in his patrol car to the station to check out. Being in very close proximity to the store when the radio call was broadcast, he responded to investigate the silent alarm. When he arrived at the store another vehicle had pulled in. The officer cautioned the driver not to enter the store. He cleared his gun from his raincoat but left it holstered. The officer entered the store and was met by appellant. When asked if he worked there the appellant answered by an affirmative nod. Although the officer could not see it, the appellant was holding his pistol by his side. Without warning he raised the gun and shot the officer in the head. The officer never drew his weapon. He died from the wound during the early morning hours of the next day. Thereafter, the appellant and Jackson fled with approximately $108.00.

Other officers arrived at the scene in response to the alarm and began an investigation. The 1977 Pontiac was found a few blocks away. The tag had been replaced by a stolen tag that was covered with cardboard. Appellant's fingerprints were on the rear view mirror of the car and a .44 caliber magnum cartridge was found inside.

Approximately four hours after the robbery, the police stopped the appellant and Jackson in the area. Upon determining that they fit the description of the robbers, both were patted down. A .38 caliber revolver was found in appellant's pocket. It had one spent cartridge and cigarette filters in the remaining chambers to simulate a fully loaded weapon. A .44 caliber magnum cartridge identical to that found in the car was also taken from the appellant's person.

Jackson had the stolen money in the paper sack upon his person. Tests revealed that appellant recently had fired a weapon. His fingerprints were found on the cooler door and expert testimony established that, although badly mutilated, the fatal bullet was probably fired from his gun. The four eyewitnesses identified the appellant as the perpetrator.

1. In his first enumeration of error, appellant contends that the trial court erred in denying his motion to quash the indictment or in the alternative for a commitment hearing.

Appellant was arrested on April 4, 1979, on charges of murder and armed robbery, and was held in juvenile detention facilities. Code Ann. § 24A-1403 (b).

On April 5, 1979, he was indicted by the Muscogee County Grand Jury. The record shows that less than 72 hours elapsed from

arrest to indictment. Therefore, Code Ann. § 27-210 was not applicable, and the court did not err in denying appellant's motion. *Johnson v. State,* 215 Ga. 839 (114 SE2d 35) (1959); *Whisman v. State,* 223 Ga. 124 (153 SE2d 548) (1967). Appellant further argues that he should have received a transfer hearing. A transfer hearing is not required where the offense is one over which the juvenile and superior courts have concurrent jurisdiction and the superior court first takes jurisdiction. *Hartley v. Clack,* 239 Ga. 113 (236 SE2d 63) (1977).

2. In his second enumeration of error, appellant contends that six veniremen were erroneously held to be disqualified under the rule of Witherspoon v. Illinois, 391 U. S. 510 (88 SC 1770, 20 LE2d 776) (1968). Each of the stricken veniremen was subjected to the following (or substantially identical) voir dire questions by the state and gave substantially the same response.

Q. "If the evidence in this case should develop that the defendant was 16 years of age at the time of the crime, would this one factor alone, standing alone, not taking into account any of the other factors . . . cause you to be unable to fairly and fully weigh the death penalty as one of the possible punishments?" A. "I couldn't, I couldn't vote to impose the death penalty on a 16-year-old." Q. ". . . no matter what the other facts and circumstances might be?" A. "No."

Upon the state's motion, each of the six veniremen responding that they could not impose the death penalty on a 16-year-old was stricken for cause. It is clear from the transcript that the six stricken jurors would refuse to consider the death penalty in the case before them due to the appellant's age.

In Witherspoon v. Illinois, 391 U. S. 510, 522 (fn. 21), supra, the Supreme Court held that: "[V]eniremen . . . cannot be excluded for cause *simply because they indicate that there are some kinds of cases in which they would refuse to recommend capital punishment.* And a prospective juror cannot be expected to say in advance of trial whether he would in fact vote for the extreme penalty in the case before him. The most that can be demanded of a venireman in this regard is that he be willing to consider all of the penalties provided by state law, and that he not be irrevocably committed, before the trial has begun, to vote against the penalty of death regardless of the facts and circumstances that might emerge in the course of the proceedings. If the voir dire testimony in a given case indicates that veniremen were excluded on any broader basis than this, the death sentence cannot be carried out . . ." (Emphasis supplied.) Veniremen who are irrevocably committed, before the trial has begun, to vote against the penalty of death regardless of the facts and cir-cumstances that might emerge in the course of the trial, may be

excluded for cause. But veniremen who are not irrevocably committed, before the trial has begun, to vote against the penalty of death regardless of the facts and circumstances "cannot be excluded for cause simply because they indicate that there are some kinds of cases in which they would refuse to recommend capital punishment." 391 U. S. at 522 (fn. 21). A venireman cannot be excluded for cause simply because he indicates that he would refuse to recommend capital punishment for a 16-year-old. Monserrate v. Indiana, 271 NE2d 420, 423 (S. C. Ind. 1971).

The holding of Witherspoon is particularly applicable to our post-Furman (Furman v. Georgia, 408 U. S. 238 (92 SC 2726, 33 LE2d 346) (1972)) death penalty statute (Ga. L. 1973, pp. 159, 163; Code Ann. § 27-2534.1(b)). Adams v. Texas, 48 USLW 4869, 4871 (1980). The jury must be allowed to consider mitigating circumstances. Jurek v. Texas, 428 U. S. 262, 271 (96 SC 2950, 49 LE2d 929) (1976); *Hawes v. State,* 240 Ga. 327 (9) (240 SE2d 833) (1977); *Spivey v. State,* 241 Ga. 477 (2) (246 SE2d 288) (1978). Age (youth) is a mitigating circumstance. Yet here the state was permitted to strike for cause those veniremen who would have given utmost consideration to the mitigating factor of the age of the appellant.

A simple illustration explains the problem. If the state were permitted to exclude for cause those veniremen who said they could not impose the death penalty upon a sixteen-year-old with no prior criminal record who was an orphan, all veniremen who would consider that the mitigating circumstances outweighed the aggravating circumstances could be excluded by the state for cause.

The death penalty imposed in this case (not the conviction for the crime of murder) must be vacated due to the exclusion for cause of the six veniremen. Witherspoon v. Illinois, supra.

Appellant also argues that while seventeen additional jurors were properly stricken for cause under Witherspoon, five jurors should have been stricken due to prejudice in favor of the death penalty. In effect, it is asserted, the trial court used a "double standard" which resulted in a panel prejudiced in favor of the death penalty. However, each of these five jurors clearly and unequivocally answered that they would consider both penalties authorized by law in their deliberation. They were not "irrevocably committed" to impose the sentence of death no matter what the facts and circumstances of the case. We find no error in the failure to strike these five jurors.

3. In enumeration of error three, appellant contends that his appointed trial counsel was inadequate and incompetent. *Pitts v. Glass,* 231 Ga. 638 (203 SE2d 515) (1974). Appellant advances three acts or omissions which he contends illustrate ineffective assistance

of counsel. This court concludes after careful review of the record that the alleged acts or omissions did not constitute ineffective assistance of counsel. *Jones v. State,* 243 Ga. 820 (256 SE2d 907) (1979).

While other counsel, had they represented appellant, may have exercised different judgment, the fact that trial counsel chose to try the case in the manner in which it was tried, and made certain difficult decisions regarding the defense tactics to be employed with which appellant and his present counsel now disagree, does not require a finding that the representation below was so inadequate as to amount to a denial of effective assistance of counsel. *Estes v. Perkins,* 225 Ga. 268 (167 SE2d 588) (1969).

Although the issue of ineffective assistance of counsel is being presented for the first time in this court, rather than in the trial court, thereby precluding evidence of counsel's qualifications being introduced in the record, this court notes that the trial judge's report shows counsel has been in practice five to ten years and is engaged in a predominantly criminal practice.

It is apparent from the record that defense counsel was familiar with the facts of appellant's case, and that he filed pretrial motions and argued them vigorously. At trial, he conducted an extensive voir dire examination, made objections and moved to excuse certain prospective jurors. He objected during trial and presented evidence in mitigation during the sentencing phase.

Prior to trial, defense counsel had attempted to plead in return for a recommendation of a life sentence. The district attorney refused his offer and appellant was put on trial. Appellant now complains that counsel failed to cross examine certain witnesses. However, the evidence of guilt was overwhelming. In view of the number of eyewitnesses and physical evidence, extensive cross examination indeed may have insulted the jury's intelligence, as counsel told the jury. He did, however, cross examine witnesses when an opening appeared, and when he could elicit favorable responses.

Appellant argues that his counsel at the close of the state's case as to guilt agreed in his closing remarks that the state had proven everything it said it would prove. Furthermore, in his closing argument during the sentencing phase, he praised the victim as a fine officer. It is apparent that counsel, faced with overwhelming evidence of guilt, sought not to contest that issue but instead sought to avoid the death penalty. His reference to the victim in the context of the argument was favorable to the defense and was an integral and rational part of a plea for mercy on behalf of appellant. Such matters relate to trial strategy, and therefore this enumeration is

without merit. *Goodwin v. Hopper,* 243 Ga. 193 (253 SE2d 156) (1979).

4. Although not enumerated as error, as part of our independent review mandated by Code Ann. § 27-2537(i) this court has noted error in the verdict. The trial court in his instructions to the jury during the guilt-innocence phase of the trial charged that they were authorized to convict the appellant of murder if they found either malice murder or that the murder was committed in the commission of a felony. Code Ann. § 26-1101(a) and (b). The appellant was indicted for malice murder. The jury was not instructed that if they found felony murder they could not also convict on the underlying felony, it being a lesser included offense of felony murder. *Collier v. State,* 244 Ga. 553 (261 SE2d 364) (1979). The jury returned a verdict of guilty without specifying malice murder or felony murder. The evidence in this case authorized a verdict of felony murder, and the appellant must be given the benefit of the doubt. The supporting felony in this case, armed robbery, would be the lesser included offense, and the verdict and sentence thereon must be vacated. *Reed v. State,* 238 Ga. 457 (7) (233 SE2d 369) (1977); *Dampier v. State,* 245 Ga. 427 (265 SE2d 565) (1980).

5. In his last enumeration of error, appellant contends that he wrongfully received a sentence of death in that the sentence was motivated by prejudice and passion. Appellant argues that in view of the fact that he is a 16-year-old black male who had shot a white policeman, the district attorney's closing argument in the sentencing phase so impassioned the jury as to cause them to render a verdict as a result of passion or prejudice. In view of our determination that the death penalty must be vacated, we do not reach this enumeration.

Direction is given to the trial court as follows: The trial court is directed to vacate the conviction for armed robbery and to grant a new trial as to the death sentence or, in lieu thereof, vacate the death sentence and sentence the defendant to life in prison.

*The sentence of death and the conviction for armed robbery are vacated with direction; otherwise the judgment is affirmed. All the Justices concur, except Hill, J., who concurs specially, and Undercofler, C. J., Nichols and Marshall, JJ., who dissent as to Division 2 and to the reversal of the death penalty.*

ARGUED APRIL 14, 1980 — DECIDED JULY 1, 1980.

*William Cain, Sr., William Cain, Jr.,* for appellant.
*William J. Smith, District Attorney, Arthur K. Bolton,*

*Attorney General,* for appellee.

Hill, Justice, concurring specially.

I concur in the setting aside of the death penalty on a 16-year-old for the additional reasons expressed in the concurring opinions of Hall, J., and this writer in *Hawes v. State,* 240 Ga. 327, 337, 340, 341 (240 SE2d 833) (1977). In my view, section 2 of Ga. L. 1963, p. 122, has not been repealed; it prohibits the imposition of the death penalty when the defendant has not reached his seventeenth birthday at the time of the commission of the offense. See *Osborne v. Ridge View Associates,* 238 Ga. 377, 379 (233 SE2d 342) (1977) (Hill, J., dissenting).

Moreover, I concur in the setting aside of the death penalty in this case because, under Code Ann. § 27-2537 (c) (3), this court is to determine whether the sentence of death is excessive or disproportionate to the penalty imposed in similar cases, considering not only the crime but also the defendant. We have had only one case since reenactment of our death penalty statute, Ga. L. 1973, p. 159, in which a defendant sentenced to death was under 17 at the time of commission of the crime, *Hawes v. State,* supra.[1] Hawes' death penalty was set aside by this court.[2] Over 2 1/2 years have passed and no death penalty appeal by Hawes has reappeared before this court. It is therefore safe to assume either that Hawes was not retried, or that if he was retried the jury did not impose the death penalty. Thus, I would find that the death penalty has so rarely been imposed upon persons under 17 as to make the death sentence in this case excessive and disproportionate and hence unconstitutional. *Coley v. State,* 231 Ga. 829, 835 (204 SE2d 612) (1974); *Gregg v. State,* 233 Ga. 117, 127 (210 SE2d 659) (1974); Code Ann. § 27-2537 (c) (3). Compare *Crawford v. State,* 236 Ga. 491 (224 SE2d 365) (1976) (life sentence for 16-year-old); *Crawford v. State,* 240 Ga. 321 (240 SE2d 824) (1977) (life sentence for 16-year-old); *Brooks v. State,* 238 Ga. 529 (233 SE2d 783) (1977) (life sentence for 16-year-old); *English v. State,* 234 Ga. 602 (216 SE2d 851) (1975) (life sentence for 16-year-old).

Nichols, Justice, dissenting.

I dissent to Division 2 of the opinion, and would affirm the jury's verdict imposing the death penalty on Lewis.

---

[1]Prior to *Hawes* after 15-year-old Preston Cobb, Jr., was sentenced to death in 1961, *Cobb v. State,* 218 Ga. 10 (126 SE2d 231) (1962), the General Assembly prohibited execution of persons under 17. Ga. L. 1963, p. 122, supra.

[2]One basis for setting Hawes' death penalty aside was that the jury was not

In the voir dire examination the state asked potential jurors a hypothetical question: "if the evidence in this case should develop that the defendant was 16 years of age at the time of the crime, would this one factor . . . cause you to be unable to fairly and fully weigh the death penalty as one of the possible punishments?" Six veniremen stated that they would refuse to consider the death penalty as punishment for a 16-year-old. These individuals were stricken for cause. The majority reverse Lewis' death sentence because under *Witherspoon v. Illinois,* 391 U. S. 510 (88 SC 1770, 20 LE2d 776) (1968), "veniremen . . . cannot be excluded for cause simply because they indicate that there are some kinds of cases in which they would refuse to recommend capital punishment." 391 U. S. 522, fn. 21.

I would follow the second portion of the above quoted footnote which states: "[t]he most that can be demanded of a venireman in this regard is that he be willing to *consider* all of the penalties provided by state law, and that he not be irrevocably committed, before the trial has begun, to vote against the penalty of death regardless of the facts and circumstances that might emerge in the course of the proceedings." 391 U. S. 522, fn. 21. Lewis' age was unavoidably an element in this case. Clearly, the veniremen excluded here could not abide their oaths as jurors and consider the full range of penalties which our law prescribes for the murder of a policeman. Thus, I believe they were properly stricken, and that the death sentence should not be reversed. I do not believe, as the majority states, that the stricken veniremen "would have given the utmost consideration to the mitigating factor of the age of the appellant." Rather, these veniremen would have given age absolutely controlling weight and completely refused to even consider the possibility of sentencing Lewis to death. And based on their own testimony they would have done so, not when age was presented as a mitigating factor, but as soon as they learned of Lewis' age.

I also adhere to the principles enunciated in Justice Black's dissent in Witherspoon. He says that society has as much right to an impartial jury as do criminal defendants. And that he would "never carry [the notion that the jury be as fully representative of the

instructed that it could consider mitigating circumstances (240 Ga. at 334). (This court was well aware that he was only 15 and that his age was a mitigating circumstance.) Because of this omission in the charge, I do not consider that *Hawes v. State* proves that jurors are willing to impose the penalty of death upon persons under 17.

community as possible] so far as to require that those biased against one of the critical issues in a trial should be represented on a jury." 391 U. S. at 535-536. I, like Justice Black, would not force the state "to accept jurors who are bound to be biased." 391 U. S. 540.

Therefore, I must respectfully dissent.

I am authorized to state that Justice Marshall joins in this dissent.