## 36115. GREEN v. THE STATE.

JORDAN, Presiding Justice.

Roosevelt Green, Jr., the appellant, was convicted and sentenced to death in Monroe County for the murder of Teresa Carol Allen, and the conviction and sentence were affirmed on appeal by this court, *Green v. State,* 242 Ga. 261 (249 SE2d 1) (1978). The Supreme Court of the United States, however, reversed as to sentence and remanded the case for a new trial on said issue. Green v. Georgia, 442 U. S. 95 (99 SC 2150, 60 LE2d 738) (1979); remand 244 Ga. 27 (257 SE2d 543) (1979) (The United States Supreme Court reversed the sentence on the sole ground that a conversation between co-defendant Moore and Thomas Pasby was excluded during the pre-sentence hearing).

At the new sentencing trial, at which Pasby testified, the jury again returned a verdict for the death sentence, and the case is presently before this court for mandatory review of the same. Code. Ann. § 27-2537. The facts surrounding the death of the victim, including the statement of Thomas Pasby, are amply set out in *Green v. State,* supra, and its companion case, *Moore v. State,* 240 Ga. 807 (243 SE2d 1) (1978) and will not be repeated here.

### Enumerations of Error

1. Appellant contends that the trial court's denial of his motion for a change of venue violated his right to an impartial jury. The appellant notes that there was widespread pre-trial publicity such that every prospective juror had heard about the case.

We note, however, that while each prospective juror had heard something about the case, each prospective juror not struck for prejudice expressly indicated that he or she could lay aside any opinion that he or she had formed and render a sentence based upon the evidence. Irvin v. Dowd, 366 U. S. 717 (81 SC 1639, 6 LE2d 751) (1960); *Collier v. State,* 244 Ga. 553 (261 SE2d 364) (1979); *Tucker v. State,* 244 Ga. 721 (261 SE2d 635) (1979).

We note further that only seventeen of the sixty-four veniremen were excused for cause, and that only four of the seventeen were excused for prejudice.

This low percentage of veniremen excused for prejudice (approximately 5%) strongly corroborates the expression of impartiality by the other jurors not so excused. Murphy v. Florida, 421 U. S. 794 (95 SC 1555, 43 LE2d 772) (1974); *Tucker v. State,* supra (5% dismissal rate corroborates absence of prejudicial bias); *Collier v. State,* supra (20% dismissal rate corroborates absence of prejudicial bias); *Coleman v. State,* 237 Ga. 84 (226 SE2d 911) (1976)

(49% dismissal rate corroborates absence of prejudicial bias); *Butler v. State,* 231 Ga. 276 (201 SE2d 448) (1973) (cert. den. 420 U. S. 907 (1974) (36% dismissal rate corroborates absence of prejudicial community bias; cf, Irvin v. Dowd, supra (1960) (62% dismissal rate corroborates actual juror partiality).

We note finally that the evidence shows only one recent newspaper article concerning the appellant. Eighteen pages of exhibits concern articles published during the first trial — that is, two years prior to resentencing, and three pages of exhibits concern the United States Supreme Court's reversal of sentence. There is no evidence of a "total inundation of the judicial process by the media." Estes v. Texas, 381 U. S. 532 (85 SC 1628, 14 LE2d 543) (1965); Sheppard v. Maxwell, 384 U. S. 333 (86 SC 1507, 16 LE2d 600) (1966).

Furthermore, the appellant failed to exhaust all of his peremptory challenges. *Coleman v. State,* supra; *Davis v. State,* 241 Ga. 376 (247 SE2d 45) (1978).

This enumeration of error is without merit.

2. Appellant contends that the trial judge erred in failing to grant his challenge to the array. He asserts that sixty of the traverse jurors serving in the present case had served in the August term of the Monroe County Superior Court and that their service in the present case therefore violated Code Ann. § 59-803. The present trial, however, began on November 5, 1979, which was still within the August term of the Monroe County Superior Court. The jurors were properly summoned (Code Ann. § 24-3009). Also, the mere fact of prior jury service is no basis for a challenge to the array. See *Harris v. State,* 191 Ga. 243, (12 SE2d 64) (1940); *Dickerson v. State,* 151 Ga. App. 429 (260 SE2d 535) (1979). Finally, we note that the appellant cannot complain that his jury panel did not represent a cross-section of the community; as there was no showing that the August jury list or the panels put upon the appellant were constitutionally inadequate. Appellant's second enumeration of error is without merit.

3. The appellant argues that the trial court erred in refusing to allow him to question each prospective juror on voir dire outside of the presence of the other jurors, and, in refusing to allow him to use written juror information forms to obtain extensive background information on each juror.

Such matters are necessarily within the sound discretion of the trial court. *Finney v. State,* 242 Ga. 582 (250 SE2d 388) (1978). The trial court did not abuse its discretion in denying the appellant's motion. This enumeration is without merit.

4. Appellant contends that jurors were removed for cause in violation of the Witherspoon rule. The responses of the excluded jurors, however, clearly established that they would automatically

vote against the imposition of the death penalty regardless of the facts and circumstances of the case. Their exclusion by the trial court was not error. Witherspoon v. Illinois, 391 U. S. 510 (88 SC 1770, 20 LE2d 776) (1968); Lockett v. Ohio, 438 U. S. 586 (98 SC 2954, 57 LE2d 973) (1978).

Appellant's additional argument that irrespective of Witherspoon such exclusions deprived him of a representative cross-section of the community is also without merit. *Bowen v. State,* 244 Ga. 495 (260 SE2d 909) (1979).

5. The appellant argues that the trial court erred in not striking for prejudice two prospective jurors, the first of whom had been a spectator not only at the appellant's previous trial, but also at the trial of his co-defendant, Moore, and the second of whom was a secretary in the law firm that had represented the appellant's co-defendant. While the second juror had formed his opinion as to guilt, neither juror had formed an opinion as to sentence.

Appellant had been tried and convicted of the crime of murder. The sole question to be tried was that of punishment. Since neither juror had any opinion as to sentence, neither was subject to a challenge for prejudice. Code Ann. §§ 59-804, 59-806 and 59-807. Appellant's fifth enumeration of error is without merit.

6. Appellant complains that the five armed deputies present in the courtroom conveyed to the jury that the defendant was dangerous in violation of his right to an impartial jury. We do not agree.

The appellant was a convicted murderer with a record of escape. The courtroom contained numerous doors and windows.

"A defendant has a right to be tried in an atmosphere free of partiality created by the use of excessive guards except where special circumstances exist. . ." *Allen v. State,* 235 Ga. 709, 711 (221 SE2d 405) (1975) citing Kennedy v. Cardwell, 487 F2d 101 (6th Cir. 1973). One such special circumstance is a history of escape. *Allen v. State,* supra.

Appellant also argues that the trial judge abdicated the security of the courtroom to the discretion of law enforcement personnel. The trial judge's order reads as follows: "The security of the courtroom is a matter which addresses itself to the Sheriff, in his discretion, as to the *type of security required and will not be interfered with by the court in the absence of a flagrant abuse of this discretion.*" (Emphasis supplied.) It is apparent from the trial court's order that while the sheriff was charged with the security of the courtroom, the trial court continued to oversee the sheriff's security measures. We hold that the trial court neither abused nor abdicated its discretion and that this enumeration of error is without merit.

7. Appellant argues that the trial court erroneously admitted

into evidence three statements which he had given involuntarily and without waiver of his Miranda rights. This argument was decided adversely to the appellant on his previous appeal and he, therefore, cannot raise this issue in the present appeal. *Burger v. State,* 245 Ga. 458 (265 SE2d 296) (1980).

8. The appellant contends that his right against double jeopardy was violated by the introduction of evidence which supported two aggravating circumstances charged to, but not found by, the jury in appellant's initial trial. The statutory aggravating circumstances set forth in Code Ann. § 27-2534.1 (b) (1-10) are not offenses within the meaning of the double jeopardy clause. *Redd v. State,* 242 Ga. 876 (252 SE2d 383) (1979). The trial court did not err in admitting the contested evidence.

9. Appellant alleges error in the admission into evidence of certain portions of the victim's body. This evidence was admitted at the initial trial and found upon appeal to be admissible. *Green v. State,* supra. The appellant cannot now raise the same issue on appeal of the resentence hearing. *Burger v. State,* supra.

10. The appellant contends that the admission of evidence which does not support a statutory aggravating circumstance violates the Eighth and Fourteenth Amendments by allowing the sentencing body to sentence in the standardless manner condemned in *Furman v. Georgia,* 408 U. S. 238 (92 SC 2726, 33 LE2d 346) (1972).

Under our statute, a jury cannot impose the death sentence unless the state proves beyond a reasonable doubt the existence of at least one statutory aggravating circumstance. This statutory scheme has repeatedly been held constitutional. *Gregg v. Georgia,* 428 U. S. 153 (96 SC 2909, 49 LE2d 859) (1978). However, it is also constitutionally required that a statute providing for the death penalty allow the sentencing body the discretion to weigh all aspects of the defendant's character and record as well as the circumstances of the offense. See *Lockett v. Ohio,* supra; *Fair v. State,* 245 Ga. App. 868 (268 SE2d 316) (1980).

We find the statutory procedure directs and limits the discretion of the sentencing body so as to minimize the risk of "wholly arbitrary and capricious action" in inflicting a death penalty. *Gregg v. Georgia,* supra.

11. The appellant subpoenaed an out-of-state witness, Father William James, who had been head of the foster home in which the appellant had lived. When the court was informed that the witness might not be able to testify in sequence, that is, after the state rested, the court stated, "I don't want to break into the State's case, but I will let you put a stipulation into the record... If the State's not through I will send the jury to the room and put him up . . . and let him be cross

examined and then at the proper time, I will let you introduce that record." The defense counsel acquiesced. However, when the witness arrived, the defense counsel instead of addressing the court, asked the district attorney to participate in a deposition. The district attorney refused, and the witness left the state.

The appellant argues that the refusal of the district attorney to participate in a deposition deprived him of an important mitigating witness. We do not agree. The trial court had formulated a device, upon agreement of defense counsel, to preserve the desired testimony without interrupting the orderly sequence of the trial, and the complained of deprivation was the result of defense counsel's failure to comply with the trial court's reasonable discretion. There is no merit in appellant's eleventh enumeration of error.

12. The appellant contends that the trial court erred in denying his motion for mistrial premised on the court's allegedly improper comment on his failure to testify.

Appellant, upon proper motion, was allowed to act as co-counsel. As such, he was allowed to present part of the closing argument. Prior to addressing the jury, appellant was cautioned by the trial court as to the proper limits of argument.

During closing argument, appellant stated: "I wasn't there; . . . I didn't have no idea that man was going to kill this young lady." The state objected and was sustained. The court then instructed the jury to disregard the statement and rebuked appellant in the following language: "I will state to the jury, this man has not testified during the trial of the case and the state did not have an opportunity to cross examine him and he cannot make an unsworn statement to you at this time concerning the things he's just saying. He's acting as his own co-counsel and he is allowed to argue the evidence in the case, but he cannot get before you now and give testimony or give evidence. That should have come from the stand under oath, if he desired to do it. I will sustain the objection. I cautioned you about that and I know that you aren't tutored in the law and I understand but you can argue the evidence but do not make any statements in the nature of testimony."

First, we hold that the trial court did not abuse its discretion in ruling the appellant's argument improper. While the appellant, in closing argument, was entitled to draw inferences from the evidence, the appellant was not entitled to give new evidence in the form of his own direct testimony.

Given the state's timely objection to the appellant's improper argument, the court was under an affirmative duty to instruct the jury to disregard said argument and to rebuke counsel for his remarks. *Brown v. State,* 110 Ga. App. 401 (138 SE2d 741) (1964). The

failure to so instruct and rebuke allows the improper argument to go to the jury with the apparent sanction of the court. *Estep v. State,* 129 Ga. App. 909 (201 SE2d 809) (1973); *Moorehead v. Counts,* 130 Ga. App. 453 (203 SE2d 553) (1973).

The extent of the rebuke and instructions is within the discretion of the trial judge. *Benefield v. State,* 140 Ga. App. 727 (232 SE2d 89) (1976). We conclude that the trial court's instructions to the jury as quoted were not direct comments on the failure of the defendant to testify, but were explanations as to why such statements were to be disregarded by the jury. See *Driver v. State,* 118 Ga. App. 559 (164 SE2d 360) (1968). This enumeration is without merit.

13. Appellant contends that the prosecutor deliberately injected passion and prejudice into the hearing, by two improper comments during voir dire. This court finds that both statements were made in legitimate argument, either to correct inaccurate statements made by defense counsel, or to set forth the state's position regarding an obviously unlawful voir dire question. We also note that the statements reflected facts later placed before the jury by competent evidence. We find no error. Reference to the affirmance of appellant's conviction does not violate the rule of *Prevatte v. State,* 233 Ga. 929 (214 SE2d 365) (1975).

The appellant argues that passion or prejudice was also injected into the proceedings by the state's asking the arresting officer on direct examination why appellant was arrested in South Carolina, to which the witness replied "well we had an armed robbery . . ." When defense counsel moved for a mistrial, the trial court asked counsel if he wished the jury to be instructed to disregard the remark. When defense counsel answered in the affirmative and requested that the instructions be given in the language he suggested, the trial court complied with his request and instructed the jury to disregard the contested evidence. *Sprouse v. State,* 242 Ga. 831 (252 SE2d 173) (1979). This enumeration is therefore without merit.

14. Appellant argues that he was entitled to a jury instruction that the appellant is presumed innocent of the alleged statutory aggravating circumstances. This argument has been raised before and decided adversely to appellant's position. *Finney v. State,* 242 Ga. 582 (250 SE2d 388) (1978).

15. Enumerations of error 15, 18, 19 and 30 concern the sentence and will be addressed in that portion of this opinion.

16. During deliberations, a juror fainted and the trial judge questioned the foreperson of the jury as to the physical status of the ill juror. The foreperson answered that the juror was physically and emotionally unable to continue and that the juror had requested to be relieved. The foreperson also told the court that from her personal

observation this juror was unable to continue. The trial court excused the juror, and substituted, without objection, the first alternate. Appellant alleges error and argues that the trial court should have questioned the ill juror itself. We do not agree.

Such matters are necessarily within the discretion of the trial court and no abuse of discretion has been shown. The substitution of the alternate juror was proper. *Tanner v. State,* 242 Ga. 437 (249 SE2d 238) (1978); Code Ann. § 59-910. Enumeration of error 16 is without merit.

17. Appellant contends that the trial court erred in failing to sentence the appellant to life imprisonment in that the verdict returning the death sentence was not unanimous.

After the verdict and sentence of the court, and after asking if he was excused, defense counsel requested a poll of the jury. During the poll, a juror replied to the question, "Is this your verdict now" by stating, "No, its not, Your Honor. I cannot do it." The juror previously had responded that the verdict was his verdict in the jury room.

The judge took a three-minute recess and then, upon information that the juror had misunderstood the question, called the jurors back and explained what was meant by the question asked. The jury was then polled and the formerly reluctant juror answered that it was his verdict. We find no error.

First, the motion to poll was not timely made. A motion to poll the jury must be made after the verdict is read, and before sentence is passed. *Favors v. State,* 234 Ga. 80 (214 SE2d 645); *Plummer v. State,* 229 Ga. 749 (194 SE2d 419) (1972). Second, counsel did not move for a change of sentence, apparently being satisfied by the second poll that the jury was in fact unanimous. See *Whisman v. State,* 221 Ga. 460 (145 SE2d 499) (1965) cert. den. 384 U. S. 895. *Hargett v. State,* 151 Ga. App. 532 (260 SE2d 406) (1979). Third, the record shows that the response of the juror was due to a misunderstanding. The juror thought that the court was asking, "If he was responsible for the whole thing." Jurors, being laymen, can well misunderstand some procedures and unless informed of the meaning of the poll could easily believe that they are being asked to be personally responsible for the consequences of their verdict. See United States v. Duke, 527 F2d 386 (5th Cir. 1976). This is especially true after the jury has heard sentence passed. *Favors v. State,* supra. The trial court having properly instructed the jury and corrected any misunderstanding, we find no merit in this enumeration. See United States v. Duke, supra.

The appellant, however, further argues that it was error for the bailiff to report to the trial court that the jurors misunderstood the

meaning of the poll. We find no merit in this argument. The record reflects that the bailiff overheard the jurors telling the foreperson of their misunderstanding and that he simply reported this fact to the court.

Finally, the appellant argues that the trial court's polling of the jury did not meet the minimal requirements of a poll. The trial court asked each juror, "You have heard the verdict published. Is this your verdict?"

There is no uniformity in, nor statutory authority for, polling a jury although it is a material right derived from common law. *White v. Seaboard C. L. R. Co.,* 139 Ga. App. 833 (229 SE2d 775) (1976). The object of the poll is to ascertain before the public and the prisoner that the verdict agreed upon in the jury room is *still* the unanimous verdict of the jury. *Hill v. State,* 64 Ga. 453 (1880). See *Young v. State,* 239 Ga. 53 (236 SE2d 1) (1977). We hold that, under the circumstances of this case, that is, after sentence, without objection and after instructions as to the meaning of the jury poll, the question propounded met the minimum requirements for determining if the verdict was, at that time, the verdict of a unanimous jury. We are mindful of our prior cases, such as *Burnett v. State,* 240 Ga. 681 (242 SE2d 79) (1978); however, those cases concerned themselves with a timely poll of the jury and are not applicable here.

### Sentence Review.

The death penalty imposed in this case must be reviewed by this court under the standards set forth in Code Ann. § 27-2537 (c)(1-3). Thus, we must determine whether the sentence of death was imposed under the influence of passion, prejudice, or any other arbitrary factor; whether the evidence supports the jury's finding of the statutory aggravating circumstances; and, whether the sentence of death is excessive or disproportionate to the penalty imposed in similar cases, considering the crime and the defendant.

18. Appellant contends that the trial court's omissions in the "trial judge's report" concerning resentencing deprives him of a full and adequate appellate sentence review. We note that the trial judge filed the "trial judge's report" concerning resentencing, and that the former report included the information omitted from the latter. We note also that trial counsel filed objections and comments as to parts of the "trial judge's report." Taken as a whole, these three documents contain the information necessary to assist this court in fulfilling its statutory mandate. This enumeration is without merit.

19. The appellant argues that the cumulative effect of the errors by the trial court was the imposition of the death penalty amid passion and prejudice. Upon review of the entire transcript and

record in this case, we find that this enumeration is simply unsupported by the record and is without merit. This court concludes that the sentence of death was not imposed under the influence of passion, prejudice, or any other arbitrary factor.

20. We have reviewed the trial court's charge to the jury and find that it is not subject to the defects dealt with in *Hawes v. State,* 240 Ga. 327 (240 SE2d 833) (1977) and *Fleming v. State,* 240 Ga. 142 (240 SE2d 37) (1977).

21. The jury found the following statutory aggravating circumstances: (1) The offense of murder was committed while the offender was engaged in the commission of another capital felony, to wit: kidnapping. Code Ann. § 27-2534.1 (b)(2); (2) The offense of murder was committed while the offender was engaged in the commission of another capital felony, to wit: armed robbery. Code Ann. § 27-2534.1 (b)(2); (3) The murder was outrageously and wantonly vile, horrible and inhuman in that it involved torture, depravity of mind or an aggravated battery to the victim. Code Ann. § 27-2534.1 (b)(7).

The evidence supports a finding of the three aggravating circumstances by a rational trier of fact beyond a reasonable doubt. Jackson v. Virginia, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

As part of our independent review, however, we note that the trial judge improperly instructed the jury as to the definition of kidnapping (the definition given was simple kidnapping, Code Ann. § 26-1311(a), not kidnapping with bodily harm). *Burger v. State,* supra. See *Patrick v. State,* 245 Ga. 417 (265 SE2d 553) (1980). However, we need not decide whether the death penalty imposed in this case must be set aside on this ground. Where two or more statutory aggravating circumstances are found by the jury, the failure of one circumstance does not taint the proceedings so as to invalidate the other aggravating circumstances found and the sentence of death based thereon. *Burger v. State,* supra; *Gates v. State,* 244 Ga. 587 (261 SE2d 349) (1979); *Gregg v. State,* 233 Ga. 117 (210 SE2d 659) (1974). No prejudice to the defendant resulted because the evidence of a capital kidnapping — that is, with bodily injury — was properly before the jury and such evidence beyond a reasonable doubt would support a finding that the murder occurred during a kidnapping with bodily injury. *Patrick v. State,* supra. See *Collier v. State,* supra.

22. Appellant asserts that Code Ann. § 27-2534.1 (b)(7) was unconstitutionally applied under the facts of this case. Godfrey v. Georgia, 446 U. S. — (100 SC 1759, 64 LE2d 398) (1980). We have recently held that in order for Code Ann. § 27-2534.1 (b) (7) to be constitutionally applied, the evidence presented at trial must satisfy certain specific criteria. *Hance v. State,* 245 Ga. 856 (268 SE2d 339)

(1980).

Under the evidence of this case, the victim, an eighteen-year-old female, was forcibly abducted from her place of employment. Once in the victim's car, appellant turned to the victim and said, "Bitch, take off your clothes." The victim pleaded that she was a virgin and not to rape her. While no body fluids of the appellant's blood type were found, testimony established sexual abuse of the victim by the appellant. Thereafter, appellant changed places with Moore, who was driving the victim's car, and Moore raped the victim so forcibly as to tear her vagina. The victim was then shot twice by a high powered rifle. The first shot to the body did not kill the victim but caused severe and disfiguring injuries to the abdomen, forearm and wrist. She was shot a second time in the face causing portions of the same to be literally blown to pieces. Death ensued from loss of blood. There was testimony that she was lying on the ground "moaning or crying" when the second shot was fired.

The murder was outrageously or wantonly vile, horrible or inhuman in that this murder is distinguishable from ordinary murders in which the death penalty is not appropriate. *Hance v. State,* supra. The victim was abducted and sexually assaulted prior to death. *Stevens v. State,* 245 Ga. 583 (266 SE2d 194) (1980); *Burger v. State,* supra. The victim was not killed instantaneously nor was this a domestic murder. She gave the appellant no reason whatsoever to assault her and was in no manner threatening. The appellant fled and attempted in every manner to hide his crime. See Godfrey v. Georgia, supra; *Hance v. State,* supra.

Torture occurs when the victim is subject to serious physical abuse before death. Serious sexual abuse may be found to constitute serious physical abuse. In determining whether the evidence shows "depravity of mind," the age, and the physical characteristics of the victim may be considered. *Hance v. State,* supra.

Under the facts of this case, we find that the murder was of the type universally condemned by civilized society as wantonly vile, horrible or inhuman, as it involved depravity of mind of the defendant and torture to the victim as set forth above. This enumeration is without merit.

23. Appellant contends that the sentence of death is excessive and disproportionate in that he did not intend the death of the victim. Appellant argues that he was not actually present when the fatal shots were fired and that he was not aware the victim would be killed. While he did not testify, he emphasizes that the evidence shows that no footprints of the shoes he *usually* wears were present. Similarly, he emphasizes the testimony of Thomas Pasby that the co-defendant said that he, not appellant, shot the victim after the

appellant was sent to get gas.

A rational trier of fact, however, could have found from the record, beyond a reasonable doubt, that the appellant either shot the victim or was present when it occurred. Jackson v. Virginia, supra. There was evidence that the appellant bragged that he had killed the victim. Gloves found at the murder scene had hair on them similar to both the appellant's and the victim's. There was no evidence presented as to what type of shoe the appellant was wearing at the actual time of the murder. Furthermore, a black male, with another black male as a passenger, was seen driving an automobile similar to the victim's (with only the letters RENS showing on the tag) into a gas station near the scene of the crime.

Cases cited by the appellant, *Hall v. State,* 241 Ga. 252 (244 SE2d 833) (1978) and *Hill v. State,* 237 Ga. 794 (229 SE2d 737) (1976) are not applicable here. In those cases, one party to a crime received a life sentence while another received a death sentence. Here both defendants received a death sentence.

The evidence most favorable to the defense shows that the appellant actively and knowingly participated in the entire criminal enterprise including the robbery, kidnapping and rape of the victim. He left her on a lonely rural road on a cold wet night with a person he knew to be armed and violent. He went for gas and when he returned he helped throw her mutilated body into the underbrush. He then took some of the stolen money, the victim's car and the murder weapon and fled the state. The defendant's participation in the murder cannot, on any reasonable basis, be termed minor. Compare *McClesky v. State,* 245 Ga. 108 (263 SE2d 146) (1980) with *Burney v. State,* 244 Ga. 33 (257 SE2d 543) (1979). See also *Stevens v. State,* supra; *Burger v. State,* supra. The record simply does not support the appellant's argument and therefore this enumeration is without merit.

In reviewing the death penalty in this case we have considered the cases appealed to this court since January 1, 1970, in which death or life sentences were imposed and find that the similar cases listed in the appendix in the appellant's first appeal, *Green v. State,* supra, and the cases decided since that case listed in the appendix attached hereto, support the affirmance of the death penalty in this case. Roosevelt Green, Jr.'s sentence to death is not excessive or disproportionate to the penalty imposed in similar cases considering both the crime and the defendant.

*Judgment affirmed. All the Justices concur, except Hill, J., who dissents.*

ARGUED APRIL 15, 1980 — DECIDED OCTOBER 7, 1980 —

REHEARING DENIED OCTOBER 31, 1980.

*Richard Milam, Stephen P. Harrison, Jack Greenberg, John Charles Boger,* for appellant.

*E. Byron Smith, District Attorney, Kenneth Waldrep, Assistant District Attorney, Arthur K. Bolton, Attorney General, Daryl A. Robinson, Assistant Attorney General,* for appellee.

APPENDIX.

*Green v. State,* 242 Ga. 261 (249 SE2d 1) (1978); *Baker v. State,* 243 Ga. 710 (257 SE2d 192) (1979); *Brooks v. State,* 244 Ga. 574 (261 SE2d 397) (1979); *Tucker v. State,* 244 Ga. 721 (261 SE2d 635) (1979); *Gates v. State,* 244 Ga. 587 (261 SE2d 349) (1979); *Patrick v. State,* 245 Ga. 417 (265 SE2d 553) (1980); *Tucker v. State,* 245 Ga. 68 (263 SE2d 109) (1980); *Burger v. State,* 245 Ga. 458 (265 SE2d 296) (1980); *Stevens v. State,* 245 Ga. 583 (266 SE2d 194) (1980).

HILL, Justice, concurring in part and dissenting in part.

Regarding Division 1, citing *Coleman v. State,* 237 Ga. 84 (226 SE2d 911) (1976), see my dissent in that case. I therefore concur only in the judgment as to Division 1.

Regarding Divisions 9 and 19, I am revolted by the macabre spectacle of the state's introduction upon resentencing of Teresa Carol Allen's pathetic ear, now so withered and misshaped as to mislead the jury as to the condition of the body when it was found. While there might have been justification for such conduct at the guilt-innocence trial, *Green v. State,* 242 Ga. 261 (8b) (249 SE2d 1) (1978), there was none here other than to inflame the jury. I therefore am unable to agree to the imposition of the death penalty because I cannot find that it was not imposed under the influence of passion or other arbitrary factor. Code § 27-2537 (c)(1). Further, I believe the deceased's ear is entitled to humane disposition rather than being treated as a gruesome souvenir of her tragic death. I therefore dissent to Divisions 9 and 19.

Regarding Division 16, after deliberating a little over 3 hours, the jurors returned to the courtroom to ask: "Can a sentence be given, 'Life in prison without parole?' " The judge informed the jury that he was unable to answer the question. After asking if the jury could have a witness' answer to a question read if the jury decided it was needed, the jury retired. Twenty-five minutes later, the foreperson returned to the court to say that a juror, Dorothy Todd, had fainted in the corridor when leaving the courtroom earlier and was, in the foreperson's opinion, physically and emotionally unable to continue,

and the juror had asked to be excused. The court excused juror Todd based upon the foreperson's statement and replaced her with an alternate juror. On appeal the defendant alleges that after the court declined to answer the question about "life without parole," the juror, upon leaving the courtroom, fell to the floor, shaking and waving her arms and saying in a voice loud enough to be heard in the courtroom: "I can't do it, I can't do it, I can't do it." The state does not refute this assertion.

It appears highly probable that the reason the juror was unable to continue (and the reason she requested to be relieved) may well have been that she couldn't impose the death penalty. In my view, the trial court should have questioned the juror personally as to the reason for her being unable to continue. The juror was qualified during voir dire under Witherspoon v. Illinois, 391 U. S. 510 (88 SC 1770, 20 LE2d 776) (1968), and from all that appears she was stricken by the court during deliberation because she was unable to vote for capital punishment under the facts of this case. See *Lewis v. State,* 246 Ga. 101 (268 SE2d 915) (1980). This is a violation of Witherspoon just the same as if she had been stricken during voir dire. See also *Miller v. State,* 237 Ga. 557, 559 (229 SE2d 376) (1976). I therefore dissent to Division 16.

For the foregoing reasons I dissent to the imposition of the penalty of death in this case.